Stanley A. HAMILTON, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–470.

United States Court of Veterans Appeals.

Argued Nov. 19, 1991.

Decided Aug. 4, 1992.

Diane Boyd Rauber, with whom Barton F. Stichman, Washington, D.C., was on the brief, for appellant.

John D. Lindsay, Jr., with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the pleadings, for appellee.

Before FARLEY, MANKIN and STEINBERG, Associate Judges.

MANKIN, Associate Judge:

Stanley A. Hamilton appeals a February 14, 1990, decision of the Board of Veterans' Appeals (BVA or Board), which denied entitlement to service connection for post-traumatic stress disorder (PTSD) incurred during his tour of duty in Vietnam. The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)). It appears that, while the medical diagnoses and opinions are virtually unanimous in concluding that appellant has post-traumatic stress disorder, the adjudicators inexplicably are not convinced that appellant suffered sufficient stressors while in military service to conclude that the PTSD is service connected. Subsequent to the BVA decision, the Secretary of Veterans Affairs (Secretary) revised the adjudication manual provision governing the evidentiary threshold necessary to find service connection. Therefore, the Secretary's motion for remand will be granted to permit the BVA to apply the current manual provision and to readjudicate the claim.

## I.  BACKGROUND

Stanley A. Hamilton served on active duty in the United States Army from September 1967 to September 1969, serving in Vietnam from January to September 1969 as a small arms repairman. R. at 11.

Hamilton's separation examination revealed no signs of psychiatric distress or disorders. R. at 8–9. On May 21, 1985, Hamilton filed his first claim for service connection for PTSD. R. at 14–19. A private therapist sent a letter to the Veterans' Administration (now the Department of Veterans Affairs) (VA) recommending further psychiatric examination for personality disorder, alcoholism, and possible PTSD. R. at 21. The Disability Evaluation form lists complaints of loss of memory, strange feelings resulting in quick anger, nervousness, uneasy sleeping, strange conversations, doing strange things, and inability to maintain a job for any length of time since service. R. at 23, 27. A psychiatric examination conducted on July 23, 1985, by a VA physician, Dr. E. Haskell Schell, Jr., concluded that Hamilton could best be described as having

> atypical personality disorder 301.89, whose personality development has been restricted by a serious developmental reading disorder 315.00, and the effects of alcohol abuse now in remission of 10 years duration 305.03. Distortions in his social adaptation can be attributed to the above diagnosis. His combat experience and reaction to it does not support the diagnosis of [Post-traumatic] Stress Disorder. R. at 29, 31–36.

Based on Dr. Schell's diagnosis, the rating decision of September 10, 1985, denied service connection for a psychiatric disorder, claimed as PTSD, and stated that the veteran's disability was the result of his own willful misconduct due to alcoholism. R. at 37.

Hamilton reopened his claim on April 29, 1986, by stating that he was receiving ongoing treatment at a VA medical center (VAMC). R. at 40. Dr. Roger K. Pitman, the Chief of Psychiatry Services there, examined Hamilton on April 9, 1986, after a referral from Mr. Brock, a counselor at the Vietnam Veterans Center. R. at 44–46. In October 1985, Hamilton had been sent to the New Hampshire Hospital on a commitment by the Monadnock Mental Health Center, which noted his treatment at the White River Junction VAMC. R. at 44. The diagnosis was: "1. post-traumatic stress disorder, post-Vietnam. 2. Minimal brain disfunction 3. Rule out mental retardation." R. at 45. Dr. Pitman recommended that the medical records from the aforementioned hospitals and the claims folder be obtained for further evaluation, and that neuropsychological testing be done, if not already done elsewhere. R. at 46. On May 9, 1986, Dr. Pitman prescribed some tranquilizers for the veteran's nervousness and recommended neuropsychological testing again. R. at 43.

On May 20, 1986, the rating board confirmed the September 1985 rating decision, and denied service connection for PTSD because there was "no objective evidence of requisite stressor." R. at 49–50. Appellant filed his Notice of Disagreement (NOD) on June 1986 and appealed to the BVA in July 1986. R. at 53, 61. A formal hearing was held on September 24, 1986. R. at 63–68. The New Hampshire Hospital sent some medical records to the VA indicating that the veteran was involuntarily admitted and hospitalized from April 17, 1985, to April 19, 1985, because he was feeling angry at his wife, took a gun from his home, went into the woods, and pointed the gun at his head. R. at 71–74. The principal diagnosis was atypical depression, but appellant was also diagnosed with an antisocial personality disorder. R. at 73.

On February 13, 1987, the rating board continued the denial of service connection for any nervous disorder, including PTSD. R. at 75–76. On June 12, 1987, the BVA remanded appellant's case in order to: 1) obtain the veteran's complete military personnel file; and 2) have the veteran examined by two psychiatrists who had not previously examined him with the complete claims file before them, so a complete current psychiatric diagnosis could be made. A new rating decision was deferred, pending results of these findings. R. at 85–88.

A VA psychiatrist, Dr. Luigi N. Dolcino, performed a psychiatric examination of Hamilton on December 23, 1987, and made a definite diagnosis of PTSD, in addition to alcohol abuse, mixed developmental disorder, and stress from the Vietnam War. He also recommended that neurological testing

be done. R. at 91–92. Based on that one examination and apparently without any neurological testing, the rating board continued to deny service connection for PTSD. R. at 93–94. There was some correspondence, without any results, between the VA and the U.S. Army and Joint Services Environmental Support Group to verify the specific Vietnam stressors described by the veteran. R. at 106–09. In a December 14, 1988, decision, the BVA again remanded appellant's case for "a definite diagnosis so [the BVA] can fairly rule in or rule out the presence of a post traumatic stress disorder." R. at 112–15.

On January 31, 1989, Hamilton was examined by Dr. James Reinhard and Dr. Lial Kofoed, who diagnosed a definite case of PTSD and a learning disability. R. at 121–26. They stated that "[h]e currently clearly meets the diagnostic criteria for post-traumatic stress disorder. Specifically there are events and stressors that would be markedly disturbing to almost anyone.... There is no evidence that these symptoms are specifically related to any other Axis 1 Diagnosis or personality disorder." R. at 124–25. Following the above findings, a February 24, 1989, rating decision continued the prior denial of PTSD, because "there [were] no objective findings of [a] life threatening stressor." R. at 127. Appellant filed another NOD on March 22, 1989. R. at 134. A formal hearing was held on May 16, 1989, where more information about the "stressors" was given by the veteran under oath. R. at 136–51. No follow-up was made to the Environmental Support Group to verify this new information. The hearing officer still denied service connection for PTSD. R. at 152. Finally on February 14, 1990, the BVA concluded that "[t]he veteran is not shown to have a psychiatric disorder, including post-traumatic stress disorder, which was incurred in or aggravated by service." *Stanley A. Hamilton,* BVA 90–04496, at 10 (Feb. 14, 1990). From that BVA decision the veteran appealed the denial of his claim to this Court. Oral argument was held on November 19, 1991, and post-oral argument briefs were filed with the Court.

## II. ANALYSIS

Appellant first argues that the BVA erred as a matter of law because its finding that appellant does not suffer from PTSD is inconsistent with its previous decisions in appellant's case. Alternatively, appellant argues that the Board's finding should be set aside as clearly erroneous. To substantiate his motion for remand, the Secretary argues that "[b]ecause the BVA was unclear in its decision on whether an appropriate stressor exists to sustain such a diagnosis, and did not adequately articulate its reasons or basis [sic] for disregarding the VA medical diagnosis regarding Appellant's currently manifested symptomatology, this case should be remanded." Appellee's Motion at 1–2. Appellant opposes the Secretary's motion for remand and requests an outright reversal on the grounds that the Board's finding that he does not suffer from PTSD is clearly erroneous.

### A.

Post-traumatic stress disorder is a compensable disorder under 38 C.F.R. § 4.132, Diagnostic Code (DC) 9411 (1991). For a veteran to be entitled to receive compensation for this disorder, it must have been incurred in or aggravated by active service. 38 U.S.C. § 1131 (formerly § 331). Appellant's reopened claim for service connection for PTSD was received by the VA Regional Office (VARO) in Manchester, New Hampshire, on April 30, 1986. R. at 40. After several denials by the VARO, the BVA remanded the case the first time for review of the entire claims file, more factual development, and a complete current psychiatric diagnosis by two psychiatrists who had not previously examined the veteran. R. at 85–87. The VARO continued the denial of service connection after only one VA physician examined the veteran, diagnosing, among other disorders, "post-traumatic stress disorder, chronic post-Vietnam." R. at 92–94. Appellant's case was reviewed by the BVA on December 14, 1988, and once again remanded for another VA psychiatric examination, preferably by a board of two psychiatrists, but by at least one who had not previously examined him.

The Board also instructed that the examiners review Program Guide 21–1, Section 0–12, concerning the specific diagnostic criteria for PTSD and that the examiners have the opportunity to review the veteran's entire claims folder. R. at 114.

On January 31, 1989, Dr. Reinhard and Dr. Kofoed performed the requested extensive examination of the veteran, applying the criteria of what is now the DEPARTMENT OF VETERANS AFFAIRS' ADJUDICATION PROCEDURE MANUAL, M21–1 (hereinafter MANUAL, M21–1). The doctors commented on the veteran's symptomatology as follows:

> He currently clearly meets the diagnostic criteria for post-traumatic stress disorder. Specifically there are events and stressors that would be markedly disturbing to almost anyone.... There is no evidence that these symptoms are specifically related to any other Axis 1 diagnosis or personality disorder. It is clear that there is evidence of a learning disability. Whereas this learning disability may have predisposed this individual in a sense of having poor emotional and cognitive reserves to deal with this trauma, they clearly do not account for solely his current symptomatology.

R. at 125. The doctors' primary diagnosis was PTSD and a learning disability. *Id.* The VARO denied the claim for an acquired psychiatric disorder, to include PTSD, finding no objective life-threatening stressor. R. at 127. On February 14, 1990, the BVA noted that

> The originating agency has cited the lack of a stressor as a basis for denial of the claim. However, the veteran clearly had service in a combat zone and the experiences he has described are neither implausible nor negligible.... the Board believes that the appeal may be resolved without questioning the veteran's claims on this point.

*Hamilton,* BVA 90–04496, at 9. The Board resolved the veteran's claim without questioning the veteran's credibility on that point, yet it continued to reject his claim.

On both remands, the BVA requested an extensive medical examination, including review of all of the claims file, by two more psychiatrists who had not previously examined the veteran to get a definite diagnosis; and that is exactly what was done. Three VA doctors found a definite diagnosis of PTSD, yet the BVA found that "the examiners relied in large part on uncorroborated history which is not substantiated elsewhere in the record." *Hamilton,* BVA 90–04496, at 9.

■ In adjudicating a veteran's claim, the Board "may consider only independent medical evidence to support [its] findings." *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991). The Court finds no adequate reasons or bases to support the BVA's refutation of the experts' medical conclusions. *See Id.* A review of the record reveals that a remand is required; thus the BVA will have the opportunity to state with specificity the reasons or bases for its rejection of the medical opinion it sought not once but twice. See *Gilbert v. Derwinski,* 1 Vet. App. 49 (1990).

### B.

■ The Court notes that the Secretary revised a VA manual provision pertinent to appellant's claim after the appeal of this case was filed in this Court. The MANUAL 21–1, part I, paragraph 50.45e, regarding the evidentiary threshold for cases involving service connection for PTSD, was amended and then rescinded and replaced by paragraph 7.46e of a new Part VI:

> If the evidence shows that veteran engaged in combat with the enemy and the claimed stressor is related to combat, no further development for evidence of a stressor is necessary. See subparagraph d above. If the claimed stressor is not combat related, a history of a stressor as related by the veteran is, in itself, insufficient. Service records must support the assertion that the veteran was subjected to a stressor of sufficient gravity to evoke symptoms in almost anyone. The existence of a recognizable stressor or accumulation of stressors must be supported. It is important [that] the stressor be described as to its nature, severity and date of occurrence.

This provision became effective March 17, 1992, after the date on which the veteran filed his appeal with the Court, but before the issuance of this Court's opinion in this case. The Court has held:

> where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant should and ... will apply unless Congress provided otherwise or permitted the Secretary of Veterans Affairs (Secretary) to do otherwise and the Secretary did so.

*Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991). Substantive rules, those which have the force of law and narrowly limit administrative action, in the VA Adjudication Procedure Manual are the equivalent of Department regulations. *Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990). Under *Karnas,* the Court is required to apply the change to this substantive rule to the appellant's claim, as is the BVA when a case is remanded for readjudication.

█ Appellant's claim must be remanded for the BVA to determine whether the conceded fact of appellant's service in a combat zone is adequately substantiated to demonstrate his having "engaged in combat with the enemy." If so, then the application of the new MANUAL 21–1 provision would require that appellant's description of the claimed stressor must be accepted unless found to be inconsistent with the circumstances of his service. The remand will also permit the BVA to address and correct the deficiencies identified by the Secretary in his motion to remand. "A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991).

## III. CONCLUSION

For the reasons stated above, the Secretary's motion for remand is granted, and the decision of the BVA is VACATED and REMANDED.

*It is so Ordered.*