Jack W. MORTON, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 96–1517.

United States Court of Appeals
for Veterans Claims.

July 28, 1999.

Before NEBEKER, Chief Judge, and
KRAMER, FARLEY, HOLDAWAY,
IVERS, STEINBERG, and GREENE,
Judges.

## ORDER

PER CURIAM:

On July 14, 1999, in a panel opinion, the
Court affirmed the Board of Veterans' Appeals decision that determined that the
appellant's claims for service connection
for hearing loss: varicose veins; a back
disorder other than scoliosis of the thoracolumbar vertebras; and shortening or
lengthening of the right upper extremity
were not well grounded. *Morton v. West,*
12 Vet.App. 477 (1999). Pursuant to the
Court's Internal Operating Procedures
(IOP) at V.(a)(3), a judge requested en
banc consideration.

On consideration of the foregoing, and it
appearing that a decision of the full Court
is not necessary either to ensure uniformity of decision or to resolve a question of
exceptional importance (*see* IOP at V.(b)),
it is

ORDERED that en banc consideration
is DENIED.

1. *See* U.S. VET.APP.R. 35(c) ("Motions for full
   Court ... [o]rdinarily they will not be granted
   unless such action is necessary to secure or
   maintain uniformity of the Court's decisions
   or to resolve a question of exceptional importance.").

STEINBERG and KRAMER, Judges,
dissenting:

Judge Steinberg called for, and we voted
for, a full Court decision in *Morton v.
West,* 12 Vet.App. 477 (1999) because the
panel opinion appears to be inconsistent
with certain current caselaw (ignored by
the panel), misinterprets 38 U.S.C.
§ 5107(a), and mischaracterizes the effect
of the Foreword to the VA Adjudication
Procedure Manual, M21–1, [hereinafter
Manual M21–1], and because the issue involved is one of exceptional importance.[1]
Moreover, the Court's issuance of this
opinion prior to oral argument in *Stuckey
v. West,* U.S. Vet.App. No. 96–1373 (oral
argument scheduled for July 29, 1999), is
most inadvisable, putting the Court in the
apparent position of proceeding without
regard to the contributions of the parties
and amici in that case where the matter
was presumably fully briefed at the direction/invitation of the Court. For the
reasons set forth below, we believe that
the opinion's analysis is incomplete and
unpersuasive.

### I. Analysis

#### A. Contrary Court Caselaw

The panel opinion ignores two precedents of this Court that are inconsistent
with key portions of the *Morton* opinion's
analysis.[2] In *Patton v. West,* the Court
held that "[t]he [Board of Veterans' Appeals (Board or BVA) ] cannot ignore provisions of the Manual M21–1 relating to
PTSD [ (post-traumatic stress disorder) ]
that are favorable to a veteran when adjudicating that veteran's claim", *Patton,* 12
Vet.App. 272, 282 (1999) (citing *Cohen
(Douglas) v. Brown,* 10 Vet.App. 128, 138–
39 (1997), *Hayes v. Brown,* 6 Vet.App. 66,
67 (1993), and *Fugere v. Derwinski,* 1 Vet.
App. 103, 109 (1990), *aff'd,* 972 F.2d 331
(Fed.Cir.1992)), and that, therefore, by vir-

2. "Only the en banc Court may overturn a
   panel decision." *Bethea v. Derwinski,* 2 Vet.
   App. 252, 254 (1992).

tue of the provisions in the Manual M21–1, Part III, ¶ 5.14c (8) and (9), "the RO is responsible for assisting the claimant in gathering, from sources in addition to in-service records, evidence corroborating an in-service stressor, by sending a special letter and questionnaire, by carefully evaluating that evidence including behavior changes, and by furnishing a clinical evaluation of behavior evidence", *Patton, supra.* The Manual M21–1 provisions enforced by the Court there were not made contingent on the submission of a well-grounded claim. The Manual M21–1 duty-to-develop provisions at issue in *Morton* are written in very directory terms [3] and are certainly no less substantive than those in *Patton.* If *Hamilton (Stanley) v. Derwinski,* 2 Vet. App. 671 (1992), which appears to be the first precedential opinion in which this Court held that the Manual M21–1 PTSD provisions were substantive rules that were binding on the BVA, and which the *Morton* opinion does discuss, and *Hayes, Cohen (Douglas),* and *Patton,* were wrongly decided, that is a matter for consideration by the full Court.

Perhaps of greatest significance, the panel opinion fails to address a clear holding in this Court's opinion in *Sarmiento v. Brown,* 7 Vet.App. 80 (1994), that appears to bear directly on the question before the Court. In *Sarmiento,* the Court sustained and enforced against the Secretary a mandatory regulatory duty that the Secretary had adopted in 38 C.F.R. § 3.203(3) (1998).

The Court stated: "[T]he Secretary has taken upon himself an affirmative non-statutory duty to 'request verification of service from the service department'" under certain circumstances on behalf of "one claiming entitlement [to Department of Veterans Affairs (VA) benefits who] fails to submit qualifying evidence of service" and who thus has not submitted a well-grounded claim. *Sarmiento,* 7 Vet. App. at 85. The inconsistency of the Court's section 5107(a) analysis in *Morton* with its analysis in *Sarmiento* is illustrated most clearly by the following quote from *Sarmiento:*

> The voluntarily-assumed regulatory duty to seek evidentiary verification is couched in mandatory, not discretionary terms and, unlike 38 U.S.C. § 5107(a) which only obligates the Secretary to assist '*such* a claimant' (emphasis added), the regulation does not make the Secretary's evidentiary duty contingent upon the submission of a well-grounded claim.

*Ibid.* The viability of this *Sarmiento* holding has never been questioned by any opinion of this Court.

Moreover, in *Sarmiento,* the Court applied a regulation that required claims development activity outside the VA on behalf of one who that opinion classified, albeit incorrectly in our view,[4] as a non-claimant, one who had "never attained the status of claimant, [and who] never [even] submitted a claim, well grounded or other-

---

**3.** Specifically, the appellant here relies on two provisions of the VA Adjudication Procedure Manual, M21–1 [hereinafter Manual M21–1], neither of which is set forth in the panel opinion at issue here. First, he relies on the following:

> Where medical causation is the issue, competent medical evidence to the effect that the claim is plausible or possible is required to make the claim well grounded. *If a claim is potentially plausible on a factual basis, the regional office must initiate development. The duty to assist will prevail while development is undertaken. If after full development the claim is found to be well grounded, the merits of the claim must be reviewed.*

MANUAL M21–1, Part VI, ¶ 2.10f (emphasis added). Second, he relies on the following:

> VA is not required to carry to full adjudication a claim which is not well grounded. *Before a decision is made about a claim being well grounded, it will be fully developed.*

MANUAL M21–1, Part III, ¶ 1.03a (emphasis added).

**4.** *See Sarmiento v. Brown,* 7 Vet.App. 80, 86–89 (1994) (Kramer, J., concurring); *see also Laruan (Anchong) v. West,* 11 Vet.App. 80, 86–91 (1998) (en banc) (Kramer and Steinberg, J.J., concurring in part and dissenting in part).

wise," and as to whom the Court stressed, "the Secretary was neither obligated to determine whether [his] claim was well grounded nor under a statutory duty to assist him in the development of evidence." *Sarmiento,* 7 Vet.App. at 83. If the Secretary is free to impose upon the VA an obligation to develop the nonclaim of a nonclaimant, it is questionable for *Morton* to hold, based upon the reasons it articulates, that 38 U.S.C. § 5107(a) *prohibits* the Secretary from voluntarily imposing on VA an obligation to assist "real" VA claimants by assisting them in developing their claims as the Manual M21–1 provisions at issue here purport to do.

## B. Attempts to Distinguish This Court's Caselaw

As pointed out in part II.A., above, the *Morton* panel ignores *Patton* and *Sarmiento, supra,* and their significance to this case. The panel attempts to distinguish *Fugere, supra,* as a case that "involved a provision granting a substantive right because its application directly affected whether a veteran's disability was to be retained or reduced", whereas in *Morton,* the panel continues, the Manual M21–1 provisions at issue only " 'interpret[ ]' " section 5107(a). *Morton,* 12 Vet. App. at 483 [hereinafter *Morton* at 483] (quoting *Paralyzed Veterans of America v. West,* 138 F.3d 1434, 1436 (Fed.Cir.1998)). The opinion also notes the following about

the VA provisions at issue in *Fugere:* "[Those Manual M21–1 provisions] dictate[d] how benefits will be awarded for specific disabilities and are based upon the Secretary's authority to define disabilities. In contrast, the [Manual M21–1 provisions at issue in *Morton* ] . . . do not create rights with respect to specific disabilities." *Morton* at 483–84. The panel opinion, however, sets forth no rationale for its implicit holding that VA's provisions are substantive only when they affect *specific* disabilities rather than *all* disabilities, a distinction that appears, at bottom, to be one between provisions that affect only a *small class* of claimants rather than *all* claimants. We fail to see any basis in logic or law for the notion that the narrowness of administrative *discretion* somehow depends on the extent to which only a specific disability is addressed, that is, the size of the class affected. The test that the *Morton* opinion appears to apply, "narrowly limits administrative action", *ibid.,* to determine whether a provision is a substantive rule, is taken from *Fugere,* 1 Vet. App. at 107. It is clear from *Fugere* and the case from which it ultimately derived that test, *Guardian Federal Savings & Loan Ass'n v. FSLIC,* 589 F.2d 658, 666–67 (D.C.Cir.1978), that the amount of discretion afforded to agency adjudicators by a "substantive" (as opposed to an "interpretive") rule, has nothing to do with the size of the class affected by that rule.[5]

---

**5.** The panel in *Morton v. West,* 12 Vet.App. 477 at 481, 483–84 (1999) [hereinafter *Morton* at 481], characterizes the provisions at issue in *Hamilton (Stanley) v. Derwinski,* 2 Vet.App. 671, 675 (1992), and *Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990), aff'd, 972 F.2d 331 (Fed.Cir.1992), as "[s]ubstantive rules, which *have the force of law* and *narrowly limit administrative action* . . . [and] are equivalent of Department regulations", and holds that the Manual M21–1 duty-to-develop provisions are not substantive because they "dictate how benefits will be awarded for specific disabilities and are based upon the Secretary's authority to define disabilities", *Morton* at 483–84. The "narrowly limit administrative action" language used in *Fugere* and *Hamilton* was taken, in *Fugere,* from *Carter v. Cleland,* 643 F.2d 1, 8 (D.C.Cir.1980), which derived

the phrase from *Guardian Federal Savings & Loan Ass'n v. FSLIC,* 589 F.2d 658, 666–67 (D.C.Cir.1978). In *Fugere,* this Court stressed that the provision at issue "regulates the awarding of benefits for hearing defects in a particular instance, i.e., when a change in benefits would result only from the implementation of a new rating schedule the old criteria must be applied". That is, the provision clearly was mandatory and not a matter left to the adjudicator's discretion. Similarly, the U.S. Court of Appeals for the D.C. Circuit in *Guardian Federal* used the phrase to draw a distinction between a rule that preserves substantial administrative discretion for the agency in question as contrasted with one that "narrowly limits" it. *Guardian Federal,* 589 F.2d at 666–67. There is no hint in *Guardian Federal* that its holding that the regulation in

Similarly, the panel states that the Manual M21–1–duty–to–develop provisions at issue in *Morton* do not "speak to whether a specific disability is to be granted or denied [service connection]". *Morton* at 483. But the provisions sustained as substantive by the Court in *Patton* and *Hamilton*, both *supra*, deal with the **manner** of VA adjudication of a PTSD claim—they neither guarantee nor deny service connection for a specific disability—and they were considered regulatory and applied by the Court nonetheless.

### C. Correct Criteria to Apply

Against this backdrop, we wish to make clear that we accept the conclusion in *Morton*, although not the rationalization presented for it, that *Fugere* and *Hamilton* do not control whether the Manual M21–1 provisions at issue in *Morton* are substantive rules. The Manual M21–1 provisions involved in *Fugere* and *Hamilton* provided specific directives in connection with the award of service connection that allowed for no exercise of discretion.[6] However, the provisions involved in the opinions ig-

nored by the *Morton* opinion, *Patton* and *Sarmiento*, both specifically deal with obligations that VA has specifically imposed upon itself to develop claims. We believe that those cases pose far more difficulty in terms of the result reached in *Morton*, and we thus find the Court's avoidance of even discussing them to be inexplicable.

In *Guardian Federal*, the U.S. Court of Appeals for the D.C. Circuit set forth some pertinent guidance that this Court would be well advised to heed and apply. It stated first, citing much authority:

> [A]n interpretative rule is merely a clarification or explanation of an existing statute or rule. The Attorney General's Manual defines interpretative rules as "rules or statements issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers."

*Id.* at 664 (footnotes omitted). The court expounded on the "limits administrative discretion" concept as follows:

> The mere existence of some discretion is not sufficient, although it is necessary,

---

question was not a substantive rule, governed by the advance-notice-and-public-comment requirements in the Administrative Procedure Act (APA), 5 U.S.C. § 553, was in any way affected by the fact that the FSLIC regulation required *all*, rather than only *some*, of the regulated savings institutions to be audited at least once annually in a manner satisfactory to the FSLIC "in accordance with general policies from time to time established by the Board." *Id.* at 661. *See* 5 U.S.C. § 553(b) ("[e]xcept when notice or hearing is required by statute, this subsection [requiring '[g]eneral notice of proposed rule making'] does not apply (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice"); *see also* 5 U.S.C. § 553(c) ("[a]fter notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments"). Hence, neither the original source of the "narrowly limits" test nor the Court's application of it in *Fugere* (or in *Hamilton*, for that matter) indicated that the measure of the substantive nature of a claims-adjudication rule adopted by VA is to be controlled by the number of persons or disabilities that its directives may encompass.

**6.** As to *Fugere*, the provision "specifically provided the following direction to adjudicators: ' "Changed Criteria. If the decrease in evaluation is due to changed criteria or testing methods, rather than a change in disability, apply the old criteria and make no reduction." ' " *Fugere*, 1 Vet.App. at 104 (quoting Manual M21–1, ¶ 50.13(b) (Nov. 18, 1987)). This was an unequivocal command. As to *Hamilton*, the Manual M21–1 required that if " 'the evidence shows that veteran engaged in combat with the enemy and the claimed stressor is related to combat, [then] no further development for evidence of a stressor is necessary.' " *Hamilton*, 2 Vet.App. at 674 (quoting Manual M21–1, Part VI, ¶ 7.46e (Mar. 17, 1992)). This provision, too, was an unequivocal command. Indeed, this requirement to forgo further development and accept the asserted stressor flows directly from opinions of this Court, as we held in *Cohen (Douglas) v. Brown*, 10 Vet.App. 128, 145–46 (1997) (citing *Zarycki v. Brown*, 6 Vet.App. 91, 97 (1993)), in interpreting 38 U.S.C. § 1154(b) and the Manual M21–1 provision.

for a rule to be classified as a general statement of policy. Thus, stringent substantive commands are not removed from section 553 because they have *some* provision for discretionary waiver. A matter of judgment is involved in distinguishing between *rules*, however discretionary in form, *that effectively circumscribe administrative choice,* and rules that contemplate that the administrator will exercise an informed discretion in the various cases that arise. *Id.* at 667 (footnote omitted; emphasis added).

The above criteria seem sensible ones to apply in attempting to determine whether the Manual M21–1 provisions at issue in *Morton* qualify as substantive rules, especially in view of the Foreword to the Manual M21–1, which the panel opinion here quotes incompletely and thereby seriously understates the extent to which the Manual M21–1 is intended to be binding. That Foreword concludes by declaring: "Devia-

tion from any of the prescribed procedures without authorization of the Chief Benefits Director is prohibited." [7] This hardly sounds like what the *Morton* panel would characterize as "at most, administrative directions to the field containing guidance as to procedures to be used in the adjudication process." *Morton* at 483 (emphasis added). Thus, based on its analysis, the panel's attempt to classify the Manual M21–1 provisions at issue as merely *interpretive* of section 5107(a) appears to be purely conclusory.

Application of the above *Guardian Federal* guidelines does, however, suggest to us a distinction that might be meaningful in terms of determining whether the case-development Manual M21–1 provisions at issue in *Patton* and *Sarmiento* narrowly limit administrative discretion whereas those case-development Manual M21–1 provisions at issue in *Morton* do not. That is, the developmental obligations estab-

---

7. The entire text of the Manual M21–1 Foreword reads as follows:

FOREWORD

This manual provides procedures for the adjudication of claims for compensation, pension, dependency and indemnity compensation, accrued benefits and burial allowance. Part I, Introduction, presents an overview of the history and organization of the Department of Veterans Affairs (VA). It also describes the organization, positions and responsibilities of an adjudication division. Part II, Clerical Procedures, outlines clerical responsibilities and actions. Part III, Authorization and Clerical Procedures, covers claims development, evidence requests and those areas where clerical and claims examiner functions overlap.

Part IV, Authorization Procedures, pertains to the responsibilities that fall within the realm of the authorization activity, such as award procedures, administrative decisions and benefit authorization. Part V, Computer Processing, explains the concepts of award processing on our computer systems. It gives examples and instructions for each type of transaction processed in adjudication.

Part VI, Rating Board Procedures, covers the responsibilities of the rating activity. It contains instructions for specific types of ratings, explanations of special procedures

for certain medical conditions and the overall descriptions of the duties of the rating specialist.

Material is divided into numbered chapters and chapter titles are listed in the table of contents. Specific subjects for each Part are found in the index included with that Part. Chapters are subdivided into subchapters where appropriate. Paragraphs are given a decimal number starting with the digit 1. The digit or digits to the left of the decimal indicate(s) the chapter number, and the digits to the right of the decimal indicate a main paragraph. Pages are numbered from 1 within each chapter and subchapter while paragraphs are numbered from 1 within each chapter.

Revisions will generally be issued in increments no smaller than a subchapter. If a change is needed, the entire subchapter, chapter or part will usually be replaced. Changes will carry the date and number of the change.

Procedural changes requiring immediate implementation may be E-mailed in letter format, over the signature of the Director, Compensation and Pension Service. Those changes will be incorporated into the manual as soon thereafter as possible.

Deviation from any of the prescribed procedures without prior authorization of the Service Director is prohibited.

MANUAL M21–1, Foreword.

lished in the *Patton/Sarmiento* Manual M21–1 provisions were extremely specific in terms of the steps required to be taken. *See Patton,* 12 Vet.App. at 278–80 (setting forth text of Manual M21–1 provisions stating "particularized requirements" as to sending and content of development letter to PTSD claimants); *Sarmiento,* 7 Vet. App. at 83 (describing 38 C.F.R. § 3.203 (1993) regulatory requirement for VA to seek verification of service from service department without any reference to requirement of prior submission of well-grounded claim). Indeed, such a distinction, derived from the extent to which the Manual M21–1 provision leaves broad discretion to the adjudicator to determine the case-development steps, would also cover *Hamilton,* where the Manual M21–1 provision at issue provided definitively that *no* further development was to be undertaken under the circumstances, thus leaving no discretion in that matter to be exercised by the adjudicator.[8]

We are not contending that the application of the above *Guardian Federal* guidelines is a matter that resolves the issue in this case clearly and unequivocally. Rather, we believe that the Court has proposed distinctions that have no basis in the authority cited for them and that the questions here should be subjected to consideration at the full Court level because of the importance of the issue and because of the existence of the caselaw in *Patton* and *Sarmiento,* both *supra,* that the Court ignores.

### D. Analysis of Section 5107(a)

Even if the deficiencies described in parts I.A., B., and C., above, were not present, the *Morton* opinion's interpretation of section 5107(a) cannot withstand scrutiny. The panel purports to conclude that the Secretary's "construction" of section 5107(a), as contained in the Manual M21–1–duty–to–develop provisions, "stands in direct contravention of the command of 38 U.S.C. § 5107" if interpreted to impose case-development duties as to claims that are not well grounded. *Morton* at 585. The panel's reasoning is circular. Subsection (a) provides:

> Except when otherwise provided by the Secretary in accordance with the provisions of this title, a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The Secretary shall assist such a claimant in developing the facts pertinent to the claim. Such assistance shall include requesting information as described in section 5106 of this title.

38 U.S.C. § 5107(a). The panel purports to "hold"[9] that the Secretary's promulgation of the Manual M21–1 provisions is contrary to section 5107(a) because it is not "in accordance with the provisions of this title" on the ground that it provides otherwise *than section 5107(a) itself,* the opening phrase of which is "[e]xcept when otherwise provided by the Secretary". Such a line of analysis is a textbook tautology. The *Morton* analysis reads out entirely the "Except" clause. Under the plain meaning of section 5107(a), the Secretary is authorized to "provide otherwise" than what is provided for in section 5107(a). Moreover, to the extent that the panel would "hold" that section 5107(a) specifically *precludes* the Secretary from eliminating the "condition precedent" of well groundedness, the panel opinion has not demonstrated, but only declared, that such a "condition precedent" is established *as an absolute matter* by section 5107(a).

In this regard, we believe that the panel opinion misconstrues the opinion of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Epps v. Gob-*

8. See discussion of *Hamilton, supra* note 6.

9. It is questionable whether the panel's conclusion can be correctly considered a "holding". *See infra* at part II.F.

er,[10] by stating that *Epps* requires the result that the panel has reached in *Morton.* Morton at 5–7. To the contrary, the Federal Circuit never addressed the "Except" clause in *Epps.* Rather, its holding was premised only on the language following that clause.[11] In addition, merely because the Congress establishes certain *mandatory* duties by law does not necessarily mean that it has foreclosed the executive from undertaking additional duties, in the exercise of its discretion under other authority, that go beyond those *mandated* by statute. In section 5107(a), we have the "Except" clause in which Congress *expressly* envisioned that eventuality, and we sustained just such a self-imposed duty, going beyond section 5107(a), in *Sarmiento, supra.*

We note, however one possible basis on which the Manual M21–1 provisions at issue might be deemed contrary to the "Except" clause. That clause appears to make an exception only as to the necessity of submitting a well-grounded claim. In essence, then, section 5107(a) could be read as authorizing the Secretary to promulgate a rule indicating under what circumstances a well-grounded claim would not have to be submitted. The Manual M21–1 provisions at issue do not purport to obviate the need to submit a well-grounded claim. Indeed, under these provisions, a well-groundedness determination is to be made ultimately, but only subsequent to development. However, it appears that, under the "Except" clause, only those claimants who have been excluded from the need to file a well-grounded claim would be entitled to the duty to assist, i.e., would be "such a claimant" to whom the duty to assist attaches. In other words, under this possible reading of section 5107(a), there would be a two-step process involved in the exercise of the "unless" clause: (1) Forgiveness of the need to file a well-grounded claim and (2) the resultant trig-gering of the duty to assist. In contrast, the two-step process provided for by the Manual M21–1 is (1) development pursuant to the duty to assist and (2) a subsequent determination of well groundedness. Thus, it could be argued that the Manual M21–1 process, by triggering a universal duty to assist where the need to file a well-grounded claim has not been excused, is inconsistent with the "Except" clause.

### E. Other Authority

The *Morton* analysis fails to address two sources of authority that, along with the "Except" clause in section 5107(a), may be the basis for the Manual M21–1 duty-to-develop provisions at issue in *Morton.* First is 38 U.S.C. § 7722(d), which provides:

> (d) **The Secretary shall provide, to the maximum extent possible, aid and assistance** (including personal interviews) **to** members of the Armed Forces, **veterans,** and eligible dependents with respect to subsections (b) and (c) and **in the preparation and presentation of claims** under laws administered by the Department.

38 U.S.C. § 7722(d) (emphasis added). In *Smith (Edward) v. Derwinski,* this Court concluded that the plain language of section 7722(d) "manifests an explicit congressional intent to create at least one duty owed by the VA to veterans as individuals .... [, that is,] to help prepare and present their claims 'to the maximum extent possible'". *Smith (Edward),* 2 Vet.App. 429, 431–32 (1992). The Court has not delineated to date the extent of the section 7722(d) "aid and assistance ... in the preparation and presentation of claims" individualized duty. *Cf. Lewis v. Brown,* 8 Vet.App. 287, 290–91 (1995) (concluding that section 7722(c) and (d) "cannot be read to support the appellant's argument that VA is under a virtually universal duty

---

**10.** 126 F.3d 1464 (Fed.Cir.1997), *cert. denied,* 118 S.Ct. 2348 (1998).

**11.** Indeed, the Federal Circuit opinion in *Epps* actually quotes the full text of the first two sentences of section 5107(a) but deletes the "Except" clause. *Epps,* 126 F.3d at 1467.

to compare, contrast, and notify" proactively VA non-service-connected "old law" pension recipient so as to determine when it would be in veteran's best interest, based on annual income declaration, for him to make an election of improved pension benefits).

Second, "[t]he Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws, including ... regulations with respect to ... the method of taking and furnishing [proof and evidence] ... to establish the right to benefits under such laws ... [and] the manner and form of adjudications and awards." 38 U.S.C. § 501(a)(1), (4). *See, e.g., Winn v. Brown,* 8 Vet.App. 510, 516 (1996) (holding that Secretary's regulation pertaining to personality disorder "is a valid exercise of the authority granted to the Secretary of Veterans Affairs in 38 U.S.C. § 501"); *Camarena v. Brown,* 6 Vet.App. 565, 567–68 (1994) (sustaining as valid under section 501 Secretary's regulation regarding definition of term "under conditions other than dishonorable" in context of whether VA claimant may be considered a veteran under title 38, U.S.Code).

The extent to which these statutory provisions authorize the Manual M21–1–duty–to–develop regulatory provisions and are consistent with the "Except" clause in section 5107(a) is certainly a question requiring greater analysis. However, the *Morton* opinion includes no analysis whatsoever on this point.

### F. Process Problems

Finally, we seriously question the legitimacy of the entire exercise following the "Pretermitting" sentence at the outset of the panel opinion's analysis. That sentence reads: "Pretermitting the question of whether the Court could or should consider arguments not raised to or adjudicated by the Board, a matter currently pending before the Court in[ ] *Stuckey v. West,* No. 96–1373, the Court will address—and reject—the merits of the appellant's substantive arguments." *Morton* at 480. To go on to conclude, in essence, that the Manual M21–1 duty-to-develop provisions are invalid where the Court is on the threshold of addressing in *Stuckey* both whether the Court can consider this issue where it was not raised to the BVA initially [12] and, if so, whether the provision is valid, is an inappropriate process as to the *Stuckey* parties/amici and comes perilously close to rendering an advisory opinion [13] by speculating on an issue that may be rendered moot by *Stuckey*—and to do so as to several matters where there may be contrary precedential caselaw.

Moreover, the inappropriateness of this process goes beyond the *Stuckey* litigants. In *Carbino v. Gober,* the Court pointedly declined to consider the same Manual M21–1 provisions being deflated here. *Carbino,* 10 Vet.App. 507, 510 (1997). One ground articulated there was that those provisions were first raised to the Court in the appellant's reply brief. However, the Court in *Carbino* went out of its way to point out: "Our declination is also based on the belief that the Acting Secretary, the Board, and the General Counsel ought first to address the issue; then, if necessary, the Court can review the question." *Ibid.* Nonetheless, the *Stuckey* panel ig-

---

**12.** In that regard, it seems pertinent that in *Patton v. West* the Court enforced against the Secretary a provision of the Manual M21–1 that the represented appellant had not raised *to the Court,* let alone to the Board of Veterans' Appeals (Board). *Patton,* 12 Vet.App. 272, 282–83 (1999) (discussing many cases regarding Court's discretion to address matters not raised before the Board).

**13.** The Court has made clear that we will not provide advisory opinions. *See, e.g., Waterhouse v. Principi,* 3 Vet.App. 473, 474–76 (1992); *see also Haines v. Gober,* 10 Vet.App. 446, 446–47 (1997) (quoting *Landicho, infra* ); *Landicho v. Brown,* 7 Vet.App. 42, 49 (1994) (quoting *Waterhouse* ); *Aronson v. Brown,* 7 Vet.App. 153, 159 (1994) (Steinberg, J., concurring) (citing *Pontarelli v. Stone,* 978 F.2d 773, 776 (1st Cir.1992)).

nored the *Carbino* injunction when it ordered the parties and invited amici to submit briefs (in an October 19, 1998, order designated for electronic publication that, apparently, was not submitted to Westlaw), and scheduled oral argument (in a June 8, 1999, unpublished order) for July 29, 1999, on the very issues that *Carbino* had said should be deferred until the Board had first ruled on them. Having seen the *Stuckey* panel jump the gun, the *Morton* panel, inexplicably, has now decided that it is necessary that the *Stuckey* case, already an illegitimate entry, be left at the starting gate. One is left to wonder why.

## II. Conclusion

For all of the above reasons, we believe that the matters involved are of exceptional importance and should be dealt with by the full Court. We want to stress again that we are not saying that the Court's conclusion as to the impact of the M21–1 provisions is necessarily incorrect. We are saying that the panel opinion's analysis is faulty and unpersuasive; that binding precedent may be in conflict with that analysis and is ignored; that *Stuckey* and not *Morton* is the case in which the issue should be addressed after a full oral argument (if the Court in *Stuckey, supra,* gets past the threshold issue); and that the Court should have the benefit of full briefing from the Secretary and appellants' advocates and full oral argument *before* deciding the knotty questions involved in this case.