# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-2251

Patrick Maddalino, Petitioner,

v.

Togo D. West, Jr.,
Secretary of Veterans Affairs, Respondent.

On Petitioner's Application for Attorney Fees and Expenses

(Decided  May 9, 2000   )

*R. Edward Bates* of Naperville, Ill., was on the pleadings for the petitioner.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Ari Nazarov* of Washington, D.C., were on the pleadings for the respondent.

Before KRAMER, HOLDAWAY, and GREENE, *Judges*.

HOLDAWAY, *Judge*, filed the opinion of the Court.  KRAMER, *Judge*, filed a dissenting opinion.

HOLDAWAY, *Judge*: Pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), the petitioner, Patrick Maddalino, seeks attorney fees and expenses incurred during the prosecution of a petition to this Court for extraordinary relief in the nature of a writ of mandamus. The Secretary has filed a response opposing the application.  For the following reasons, the Court will deny the petitioner's application.

## I.  FACTS

On December 7, 1998, the petitioner filed with this Court a petition for extraordinary relief in the nature of a writ of mandamus.  The petitioner claimed that on July 22, 1996, he had filed a Notice of Disagreement (NOD) to a VA regional office (VARO) decision which had granted him

service connection of his post-traumatic stress disorder (PTSD) and assigned a 30% disability rating. In his NOD, the petitioner argued that he was entitled to a 100% disability rating for his PTSD. He also claimed in his petition to this Court that the Secretary had issued him a Statement of the Case on August 20, 1996, that he had filed his substantive appeal on August 27, 1996, but that the Board of Veterans' Appeals ("BVA" or "Board") did not docket his appeal until July 18, 1997. Furthermore, the petitioner stated that the Secretary had informed him that the VARO had not forwarded his appeal to the Board nor had the Board advised the petitioner in writing of the assignment of the appeal to the Board's docket. The petitioner proffered that in May 1997 and again in October 1998, he had requested that the Secretary transfer his appeal to the Board and, if necessary, to this Court. Thus, the petitioner contended that the inaction of the VARO was frustrating his right to appeal to the Board. The petitioner attached the relevant documents to his petition in order to substantiate his contentions. In order to remedy this situation, the petitioner sought to compel the Secretary to do one or more of the following:

> (1) issue a Supplemental Statement of the Case [SSOC]; (2) add the Substantive Appeal ("Appeal") to the Board of Veterans' Appeals ("BVA") docket with a number contemporaneous with the date of receipt by the Secretary; (3) inform the Petitioner in writing of the assignment of the Appeal to the BVA docket; (4) inform the Petitioner of any inadequacy in the substantive appeal, if any; or (5) issue a decision.

After reviewing the petition, the Court then ordered the Secretary to respond.

On January 15, 1999, the Secretary filed his response. First, the Secretary admitted that there had been a one-year delay from August 1996 to July 1997 in docketing his appeal to the Board but that this error had already been corrected by that July 1997 docketing. The Secretary contended that the petitioner's appeal to the Board had been further delayed because the disability rating schedule for PTSD had been changed. The Secretary stated that this delay was necessary in order for a new medical examination to be provided and for the VARO to evaluate his condition under the new rating schedule. The Secretary attached a declaration from John S. Limpose, the employee at the VARO responsible for the petitioner's case. According to Mr. Limpose's declaration, the petitioner's re-examination had been provided in March 1998 and an SSOC had been sent in June 1998. Mr. Limpose reported that the petitioner refiled his substantive appeal shortly thereafter. Mr. Limpose's declaration stated that in October 1998, the petitioner submitted a "Social Security Earning

2

statement" and a letter from his attorney requesting waiver of review of this evidence by the VARO so that the matter could be sent directly to the Board. Finally, Mr. Limpose stated that the petitioner's case would be "re-certified for BVA review and transferred out today."

On January 15, 1999, the petitioner filed a reply reasserting his request that his appeal be docketed with the Board. This Court then ordered the Secretary to indicate whether the petitioner's appeal actually had been docketed with the Board. The Secretary responded by attaching a declaration of Nancy Stackhouse, the Board's Director of Administrative Services, who stated that the Board received the petitioner's file on January 20, 1999. The petitioner filed a reply to the Secretary's response and argued that although the Board had received his file, it had not assigned his appeal a docket number which corresponded to the date he originally filed his appeal in 1996. The Court then ordered both parties to participate in a conference conducted by Richard A. Bednar, a member of the Court's Central Legal Staff. The Court's order, dated April 1, 1999, stated that the "purpose of the conference is to discuss the future course of these proceedings and the possibility of resolving the remaining conflict without Court intervention." Apparently, the remaining issues between the parties were resolved during this conference. In May 1999, the petitioner filed a status report which stated, "The Secretary has completed the relief sought in the Petition" and that his appeal had been assigned "a BVA docket number contemporaneous with the date of receipt by the Secretary." Finding that all of the relief sought had been provided, the Court dismissed the petition as moot in an order dated May 21, 1999.

## II. ANALYSIS

EAJA is a waiver of sovereign immunity, and its provisions must be strictly construed in the government's favor. *See Grivois v. Brown*, 7 Vet.App. 100, 101 (1994). The EAJA statute provides that:

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . , brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that other special circumstances make an award unjust.

3

28 U.S.C. § 2412(d)(1)(A). Therefore, in order to be awarded EAJA fees, the petitioner has the burden of proof to show by a preponderance of the evidence that, inter alia, he is the "prevailing party." *See Commissioner v. Jean*, 496 U.S. 154, 158 (1990); *Chandler v. Gober*, 11 Vet.App. 6, 7-8 (1997). "To be considered a 'prevailing party' pursuant to EAJA, it must be shown that the litigant prevailed (1) by succeeding on the merits; (2) as the result of the suit's 'catalytic effects'; or (3) by application of the 'inevitable victory' test. *Weierbach v. West*, 12 Vet.App. 486, 487 (1999).

In his application, the petitioner argues that he is the prevailing party under the catalytic effects theory. In order to demonstrate prevailing party status under this theory, the applicant must show: "(1) a causal connection between the litigation and the relief obtained, and (2) that the fee-target did not act gratuitously in granting relief." *Id.* at 488 (quoting *Guglietti v. Secretary, HHS*, 900 F.2d 387, 400 (1st Cir. 1990)). The applicant must show by a preponderance of the evidence that "but for" the litigation, the Secretary would not have granted the relief sought. *See id.* Although the timing of events during a lawsuit may be significant, "'the mere existence of temporal coincidence . . . cannot alone suffice' to engage the gears of the catalyst test." *Id.* (quoting *Langston v. Johnston*, 928 F.2d 1206, 1225 (1st Cir. 1991)).

The petitioner argues that the action taken by the Secretary was "wholly dependent upon the filing of the litigation" and thus he is a prevailing party under the catalyst theory. However, the petitioner has not offered a scintilla of evidence to support this theory other than his own unsubstantiated allegations. In order for a petitioner to carry his burden of proving that he is a prevailing party, he must do more than merely allege that without this litigation, the Secretary would not have granted his relief. While it may be true that this litigation may have hastened the relief sought by the petitioner, i.e., docketing of his appeal with the Board, he has not offered any evidence that the relief sought would not have been granted without litigation. The evidence offered by the Secretary shows that in June 1998, the VARO issued an SSOC. On October 22, 1998, the petitioner submitted additional evidence and waived his right to review of this evidence by the VARO. Before the VARO could respond, the petitioner filed his request for a writ of mandamus on December 7, 1998, less than seven weeks after he submitted the additional evidence. The record does not show nor does the petitioner allege that he took any action to inquire about the status of his claim after he had filed his request in October 1998 that his right to VARO review be waived and his appeal be sent

to the Board.  *See Costanza v. West*, 12 Vet.App. 133, 134 (1999) (Court denied petition for a writ of mandamus where petitioner "provide[d] no evidence establishing that letters, telephone calls, visits to appropriate authorities, or other efforts ha[d] been undertaken to resolve delay in the processing of his case").  Simply because the VARO had not responded within a few weeks does not imply that the VARO had no intention of granting the relief sought, i.e., forwarding his appeal to the Board.  In fact, the record shows that the VARO had sent his appeal to the Board in 1997 but that his appeal was delayed in order for the VARO to reexamine and reevaluate his condition under the new rating schedule, an action done to afford him the highest possible rating.  *See generally Karnas v. Derwinski*, 1 Vet.App. 308 (1991).  Therefore, the Court finds as a fact that the petitioner has not carried his burden of showing a causal connection between the litigation and the relief granted because he has not shown that the VARO would not have forwarded his appeal to the Board.

Although the Court will deny this application on other grounds, the Court is not convinced that, even if the petitioner's suit had been the catalyst for a favorable decision, EAJA fees could be granted for representation at the VARO level where there has been no final Board decision as to the claim.  EAJA is a reimbursement statute.  *See* 28 U.S.C. § 2412.  Under this statute, the prevailing party must have incurred, at least potentially, an obligation to pay fees to an attorney.  *Id.* Under the VA system, a claimant generally cannot incur legal fees at the VARO level.  38 U.S.C. § 5904(c)(1) ("a fee may not be charged . . . for services of agents and attorneys with respect to services provided before the date on which the Board . . . makes a final decision in the case"). In this case, since the petitioner has no legal capacity to contract with an attorney on a fee basis prior to a final decision, EAJA could not be applicable because fees cannot legally be incurred.  Essentially what this petitioner is attempting to do is circumvent the system established by Congress by having his attorney represent him at the VARO and use the threat of litigation to move his claim ahead in line of other claimants, some of whom may have been waiting even longer.  This is not the purpose of a writ of mandamus.  The Court simply is not inclined to meddle in or micromanage the duties assigned to the Secretary and his officers.

## II.  CONCLUSION

After a review of the pleadings and the evidence proffered by the parties, the petitioner's application for attorney fees and expenses under EAJA is DENIED.

KRAMER, *Judge*, dissenting: Because I believe that the petitioner has demonstrated under the catalyst theory that he is a "prevailing party" for purposes of 28 U.S.C. § 2412(d)(1)(A) and because I further believe that the Secretary has not met his burden of demonstrating substantial justification, I respectfully dissent.

**I.**

In setting forth the facts of the present case, the majority noted several items of relief that the petitioner had requested in his petition. However, in determining that the petitioner was not a prevailing party, the majority essentially confined its discussion to the petitioner's request for an order directing the Secretary to transfer his appeal to the Board of Veterans' Appeals (Board or BVA). The majority did not address whether prevailing party status could be predicated on the petitioner's further request regarding the correction of his BVA docket number. As discussed below, I believe that, based upon that latter request for relief and the Secretary's actions concerning that request, the petitioner here should be considered a prevailing party.

Initially, I note the following pertinent chronology. In his December 1998 petition, the petitioner asserted that he had filed a substantive appeal with the Board in 1996 and that, although the Board had eventually docketed his appeal, the BVA had assigned a docket number that would be appropriate for a substantive appeal received in 1997, rather than 1996. In support of his petition, he submitted a declaration from a Board official, which indicated that at the time the petitioner's substantive appeal was filed it was the practice of the Board to assign a BVA docket number "based on the date of receipt of the substantive appeal." Petition, Exhibit 7. The petitioner therefore requested the Court to compel the Secretary to assign a docket number consistent with VA's 1996 receipt of his substantive appeal.

In an April 1, 1999, order, the Court noted the petitioner's assertion that the Secretary "ha[d] failed to assign the petitioner's appeal a Board docket number that correspond[ed] with the filing of his substantive appeal" (*Maddalino v. West*, U.S. Vet. App. No. 98-2251 (order Apr. 1, 1999)) and

ordered the parties to participate in a conference, which was subsequently scheduled to be conducted on April 27, 1999. On April 26, 1999, the petitioner received a telefax transmission from the VA Office of General Counsel regarding the "Maddalino writ," which stated: "The reg[ional] office misnumbering error has been rectified. This [appeal] has been docketed with the 1996 cases." Petitioner's May 3, 1999, Status Report, Exhibit A. Shortly thereafter, the petitioner submitted a filing to the Court conceding that "[t]he Secretary ha[d] completed the relief sought in the [p]etition." Petitioner's May 3, 1999, Status Report at 2. Accordingly, the Court dismissed the petition as moot.

## II.

In the instant case, the only contested issues regarding the petitioner's EAJA application are whether the petitioner was a prevailing party and whether the position of the Secretary was substantially justified. *See* 28 U.S.C. § 2412(d); *Chesser v. West*, 11 Vet.App. 497, 499 (1998); *Bazalo v. Brown*, 9 Vet.App. 304, 308 (1996) (en banc), *rev'd on other grounds sub nom. Bazalo v. West*, 150 F.3d 1380, 1384 (Fed. Cir. 1998).

### A.

The petitioner contends that, although his petition was rendered moot, he is a prevailing party under the catalyst theory because he has obtained the relief requested in the petition and because the actions taken by VA in granting that relief were "wholly dependent upon the filing of the litigation in this Court by the [p]etitioner." Petitioner's Application for Attorney Fees and Expenses at 4; *see* 28 U.S.C. § 2412(d)(1)(A); *Chandler v. Gober*, 11 Vet.App. 6, 7-8 (1997) (to be considered a prevailing party within the meaning of the EAJA, it must be shown that the litigant prevailed (1) by succeeding on the merits; (2) as a result of the suit's "catalytic effects"; or (3) by application of the "inevitable victory" test); *Lematta v. Brown*, 8 Vet.App. 504, 509 (1996). Under the catalyst theory, an EAJA applicant may become a prevailing party when his lawsuit "acts as a 'catalyst' in prompting defendants to take action to meet plaintiff's claims . . . despite the lack of judicial involvement in the result." *Lematta*, 8 Vet.App. at 509 (quoting *Guglietti v. Secretary, HHS*, 900 F.2d 397, 401 (1st Cir. 1990)). In order to succeed under this theory, the applicant must show: "'(1) a causal connection between the litigation and the relief obtained, and (2) that the fee-target did not act gratuitously'" in

7

granting the requested relief. *Weierbach v. West*, 12 Vet.App. 486, 488 (1999) (quoting *Guglietti*, 900 F.2d at 400).

With regard to the first prong of the catalyst theory, an applicant must show that the lawsuit was "'a necessary and important factor'" in achieving the relief desired. *Lematta, supra* (citing *Heeren v. City of Jamestown, Ky.*, 39 F.3d 628, 631 (6th Cir. 1994)) (citation omitted); *Garcia v. Sullivan*, 781 F.Supp. 969, 972 (S.D.N.Y. 1991) (to gain prevailing party status under the catalyst theory, "the necessary connection exists if plaintiff's lawsuit was 'a catalytic, necessary, or substantial factor in obtaining relief'" (quoting *Gerena-Valentin v. Koch*, 739 F.2d 755, 758-59 (2d Cir. 1984))). In the instant case, the petitioner filed a petition alleging, inter alia, that VA had erroneously assigned a 1997, rather than 1996, BVA docket number to his appeal. The VA Office of General Counsel, one day prior to a Court-ordered conference to discuss the Secretary's alleged "fail[ure] to assign the petitioner's appeal a Board docket number that correspond[ed] with the filing of his substantive appeal" (*Maddalino v. West*, U.S. Vet. App. No. 98-2251 (order Apr. 1, 1999)), sent to the petitioner correspondence regarding the "Maddalino Writ," stating that the "error" had been corrected. Considering the Secretary's admission of error and the litigation context within which it occurred, the only reasonable inference is that the pending conference was a necessary and important factor in causing the Secretary to acknowledge and correct the error. Thus, I would find with respect to the first prong of the catalyst theory that the petitioner has successfully demonstrated the requisite causal connection between the petition and the relief obtained. *See Lematta*, 8 Vet.App. at 509; *see also Garcia*, 781 F.Supp. at 972-73 (finding that plaintiff's lawsuit was "a catalytic factor in expediting a ruling" and that plaintiff therefore was a prevailing party under the catalyst theory); *cf. Weierbach*, 12 Vet.App. at 488.

As to the second prong, the Court, in *Lematta*, 8 Vet.App. at 509, cited *Wilderness Society v. Babbitt,* 5 F.3d 383, 386 (9th Cir. 1993), for the proposition that the second prong of the catalyst theory requires a determination as to "'whether the benefit achieved was required by law and was not a gratuitous act of the defendant.'" In turn, *Wilderness Society*, 5 F.3d at 388, cited *Sablan v. Department of Finance*, 856 F.2d 1317 (9th Cir. 1988), which described the requirements of the second prong as follows:

[T]here must be a legal basis for the [petitioner's] claim--it must not be "frivolous, unreasonable[,] or groundless." *See Fitzharris* [*v. Wolff*], 702 F.2d [836,] 838 [(9th Cir. 1983)]. Stated otherwise, "the defendant's conduct in response to the lawsuit must be required by law," [*Operating Engineers Local Union No. 3 v.*] *Bohn*, 737 F.2d [860,] 863 [(10th Cir. 1984)], to ensure that the government did not act "gratuitously in response to a frivolous or legally insignificant claim." *Crosby v. Bowling*, 683 F.2d 1068, 1070 (7th Cir. 1982).

*Sablan*, 856 F.2d at 1325. In this regard, I note that there may be some disconnect in the test set forth in *Sablan.* In one sense, it could be construed to impose an obligation on the applicant to demonstrate only that his claim was cognizable (i.e., that there was "a legal basis" for bringing the claim). *See Stivers v. Pierce*, 71 F.3d 732, 752 (9th Cir. 1995) (plaintiff is not required to demonstrate that he would have prevailed on merits in order to satisfy "legal basis" prong of catalyst test; claim has basis in law so long as it is not frivolous, unreasonable, or groundless); *Wilderness Society*, 5 F.3d at 388 (finding that plaintiff satisfied second prong of catalyst test because plaintiff's claim had "some basis in the law"). On the other hand, the language in *Sablan* could be construed to require the applicant to demonstrate that the government had an absolute obligation to provide the requested relief (i.e., that the relief was "required by law"). *See Supre v. Ricketts*, 792 F.2d 958, 962-63 (10th Cir. 1986). Although the Court has not had occasion to adopt an interpretation of the requirements of the second prong, I believe that in the present case even the more stringent interpretation would be satisfied because the petitioner has provided evidence that the Board's regular practice was to assign a docket number based on the date of receipt of the substantive appeal and the Secretary has conceded that an error was committed in failing to do so.

In light of the above, I would hold that the petitioner has demonstrated, under the catalyst theory, that he is a prevailing party for purposes of 28 U.S.C. § 2412(d)(1)(A).

B.

When the basic elements of an EAJA application are satisfied, the Court is required to award reasonable attorney fees "unless the [C]ourt finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A); *Stillwell v. Brown*, 6 Vet.App. 291, 301 (1994). Here the petitioner has alleged that the Secretary's position was not substantially justified, and thus the Secretary "has the burden of proving that [his] position was substantially justified in order to defeat the [petitioner's] EAJA application." *Stillwell*, *supra*. In order to demonstrate substantial

9

justification, the Secretary must show that his position was "justified to a degree that would satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).  The Secretary must prove that his position was substantially justified at both the litigation and pre-litigation stages. *See Locher v. Brown*, 9 Vet.App. 535, 537 (1996); *see also  Elcyzyn v. Brown*, 7 Vet.App. 170, 175 (1994) ("only one determination of lack of substantial justification with respect to the entire matter need be made").  Because the Secretary has acknowledged that an improper BVA docket number was assigned to the petitioner's appeal and has not attempted to demonstrate that VA's error was reasonable or that the delay in correcting that error was reasonable, I would find that the Secretary has not satisfied his burden of demonstrating that his actions were substantially justified.  *See Jacobsen v. West*, 12 Vet.App. 546, 547 (1999) (holding that Secretary's position at administrative level was not substantially justified where Secretary conceded, during litigation phase, that error had occurred at administrative level); *see also Cook v. Brown*, 6 Vet.App. 226, 237 (1994) (where Secretary had not presented a "substantially justified" defense, Court deemed that dispositive as to issue of substantial justification), *aff'd*, 68 F.3d 447 (Fed. Cir. 1995); *see also Vidal v. Brown*, 8 Vet.App. 488, 492 (1996).

**III.**

In sum, I believe that the petitioner should be considered a prevailing party under the catalyst theory where, as here, the Secretary has conceded that an error occurred prior to the filing of the petition and has essentially admitted that the error was detected and corrected because of the petition and the proceedings that followed.  Further, in light of the Secretarial concession of error, and the Secretary's failure to provide any argument as to the reasonableness of the mistake or the timeliness of its correction, I would find a lack of substantial justification.  Finally, I note that the majority raises an interesting question as to whether EAJA fees could be awarded in a case, such as this, where there has not yet been a final Board decision. *See* 38 U.S.C. § 5904(c)(1); *cf. In re Fee Agreement of Mason*, 13 Vet.App. 79, 85 (1999) (noting that "[a]n attorney may generally charge a fee for any services provided for representation before this Court").  However, I do not believe that the EAJA application should be decided by the Court on that alternative basis without first obtaining further briefing and oral argument on that point. *See Morton v. West*, 13 Vet.App. 205, 213 (1999)

10

(Steinberg and Kramer, J.J., dissenting); *Laruan v. West*, 11 Vet.App. 80, 91 (1998) (Kramer and Steinberg, J.J., dissenting).