This version includes the erratas dated June 10 & June 16, 2003 - e

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**


No. 97-1971

HOWARD F. ROBERSON, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.


Before FARLEY, IVERS, and GREENE, *Judges.*

**O R D E R**

On July 7, 1997, the Board of Veterans Appeals (Board or BVA) determined that a January 1984 regional office (RO) rating decision, which granted service connection for post-traumatic stress disorder (PTSD) and assigned a 70% rating for that condition effective from September 1982, did not contain clear and unmistakable error (CUE) for failing to apply the provisions of 38 C.F.R. § 3.340 regarding entitlement to a total disability based on individual unemployability (TDIU). On July 27, 1999, this Court affirmed that Board decision, concluding that the appellant had failed to make a claim for TDIU before the RO at the time of the 1984 RO decision.

The decision was appealed to the United States Court of Appeals for the Federal Circuit (Federal Circuit). On May 29, 2001, the Federal Circuit reaffirmed that a breach of the duty to assist cannot amount to CUE and concluded that the appellant's contention that the RO's failure to adjudicate a claim of TDIU in its January 1984 decision did not amount to CUE. *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001). However, the Federal Circuit reversed this Court's "holding that [the appellant] failed to make a claim for TDIU before the RO at the time of its 1984 decision." *Id.* at 1384. The Federal Circuit also found that this Court applied the wrong legal standard in determining whether a TDIU claim was raised by the evidence of record in 1984. The Federal Circuit held that the Court had misinterpreted 38 C.F.R. § 3.340(a)(1) (1983). Section 3.340(a)(1) stated at that time that "total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." The Federal Circuit found that this Court had erred in construing "proving inability to maintain substantially gainful occupation" to mean "proving 100 percent unemployability." *Id.* at 1385. Accordingly, the Federal Circuit reversed this Court's decision and remanded the matter "for a determination of [the appellant's] eligibility for TDIU." *Id.*

On August 29, 2001, following the Federal Circuit's opinion, the Court ordered both parties to file supplemental memoranda regarding the appellant's eligibility for TDIU. In his October 5,

2001, memorandum, the appellant argued that the "failure to adjudicate the TDIU claim is either a pending claim which has yet to be adjudicated by the [RO] or is [CUE] on the part of the RO based upon the failure of the VA to 'fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits.'" Appellant's October 5, 2001, Supplemental Memorandum at 2. The appellant also filed a reply on March 1, 2002.

On February 21, 2002, the Secretary responded, arguing that the Court has no jurisdiction to consider this matter. He argues that there was no final Board decision in regard to the TDIU issue and that no jurisdiction-conferring Notice of Disagreement (NOD) regarding entitlement to TDIU was filed within a year of the rating decision. Citing this Court's decision in *Hayre v. Principi*, 15 Vet.App. 48 (2001), the Secretary argues that the mere fact that the Federal Circuit assumed jurisdiction over the issue without articulating a jurisdictional basis is not dispositive as to this Court's jurisdiction. The Secretary also argued that, even if the Court had jurisdiction over the TDIU claim, the Court would be prohibited from making factual determinations in the first instance.

On November 20, 2002, the case was referred to a panel. On January 15, 2003, the appellant filed a motion for leave to submit a supplemental brief. On January 23, 2003, the Court granted the appellant's motion, accepted his brief (Appellant's January 23, 2003, Supplemental Brief), and ordered the Secretary to respond. The Secretary responded on March 17, 2003.

## I. CUE

This Court has previously affirmed the Board's finding that there was no CUE in the January 1984 RO decision. Although the Federal Circuit later found errors in the RO's, the Board's, and this Court's determinations that the appellant had not raised a TDIU claim to the RO in 1984, it did not find error with respect to the CUE determination. *Roberson*, 251 F.3d at 1384; *see also Cook v. Principi*, 318 F.3d 1334 (Fed. Cir. 2002). Accordingly, we must affirm the Board's July 1997 determination that the January 1984 RO decision was not the product of CUE.

The appellant argues that a remand is required for the Board to "fully and sympathetically develop [his] claim to its optimum before deciding it on the merits," that is, to apply the standard announced in *Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998), to his CUE motion. The appellant asserts that the Federal Circuit's opinion now requires VA, whenever presented with a CUE motion, to "fully and sympathetically develop" that argument *before* proceeding to its merits. This Court recently rejected this argument in *Lane v. Principi*, holding that the adjudication error in *Roberson* related to the development of an unadjudicated non-CUE claim (i.e., the TDIU claim), and thus held that a remand of the appellant's allegation of CUE in *Lane* was not required for the application of the *Hodge* standard. *Lane*, 16 Vet.App. 78, 86-87 (2002). The Federal Circuit's direction in this matter to "fully develop the veteran's claim" and apply the standard of development discussed in *Hodge*, relates to VA's obligation regarding the pending TDIU claim, not the CUE motion itself. *Roberson*, 251 F.3d at 1384. Thus a remand of the appellant's CUE motion is not required; however, as addressed below, the appellant's pending, unadjudicated, TDIU claim must be remanded and adjudicated by VA in the first instance.

## II.  TDIU
### A.  Jurisdiction

This Court's jurisdiction is limited to the review of final decisions of the BVA.  *See* 38 U.S.C. §§ 7105, 7252 (a), and 7266 (a); *see also Ledford v.  West,* 136 F.3d 776 (Fed. Cir.  1998); *Archbold v. Brown*, 9 Vet.App. 124 (1996); *Manio v.  Derwinski*, 1 Vet.App.  140, 144 (1991).  "Implicit in the consideration of any issue is the always inherent question of jurisdiction over that issue." *Hayre*, 15 Vet.App. at 51.  Thus, notwithstanding the Federal Circuit's remand of the appellant's unadjudicated TDIU claim, this Court must first affirmatively satisfy itself that it has jurisdiction to act.  *Id*. at 50-51.

In *Hayre*, this Court found that it did not have jurisdiction to determine whether the Secretary had breached his duty to assist the veteran in a 1972 claim that had become final and was the subject of a CUE motion in 1995.  *Hayre, supra*.  The Court specifically found that the Federal Circuit's remand in that case could not itself empower the Court with jurisdiction.  *Id*. at 50-51.  However, in so holding, this Court specifically noted that "[t]his [was] particularly true in [that] case where neither the jurisdictional issue nor the issue of the so-called 'finality' of the 1972 adjudicative action was ever raised before the BVA or this Court."  *Id*. at 51.  In contrast, where the issue of finality of a decision is specifically raised, the Board and this Court have jurisdiction to review that issue. *Compare Fenderson v. West*, 12 Vet.App. 119 (1999) (where the Board declined to adjudicate the veteran's claim, and found that the veteran had failed to file a Substantive Appeal with respect to that claim, the Court had jurisdiction to review and remand that unadjudicated claim) *and Holland v. Gober*, 10 Vet.App. 433, 436 (1997) (per curiam order) (holding that when valid NOD has been filed and VA has not issued SOC, Court will remand the matter) *with Tablazon v. Brown*, 8 Vet.App. 359 (1995) (dismissing appeal of a BVA decision finding no new and material evidence to reopen and noting the pendency of the original claim where RO's original denial had not become final)  *and Rivers v. Gober*, 10 Vet.App. 469 (1997) (dismissing appeal with respect to a claim that had been reasonably raised to the RO and Board but upon which VA had never issued an original decision). Thus, where the Court discovers on appeal that VA has failed to comply with its adjudication procedures and a claim therefore remains pending, the Court lacks jurisdiction to act on that claim, other than to note its existence and the Secretary's obligation to act.  *See, e.g. Rivers*, 10 Vet.App. at 473 ("The Court presumes the Secretary will act expeditiously in that regard.").  However, where the issue of finality of an RO decision has been expressly raised and adjudicated by the Board, this Court has jurisdiction to review that determination and, if necessary, remand the matter "'for appropriate procedural compliance.'" *Fenderson*, 12 Vet.App. at 132 (quoting *Holland*, 10 Vet.App. at 436).

The issue of the pendency of an unadjudicated TDIU claim comes before this Court in the context of CUE.  In his initial allegation of CUE made to the RO in 1995, the appellant alleged that the RO's January 1984 decision was the product of CUE because the RO had failed to consider whether he was entitled to TDIU, a claim he alleged was reasonably raised by the evidence at the time.  Record (R.) at 322-23.  The RO denied his claim, finding that he had failed to present a valid allegation of CUE.  *See* R. at 326, 333-38.  On appeal to the Board, the appellant maintained that the RO had erred in not assigning a TDIU rating, and that the error amounted to CUE.  R. at 547-50.

3

In the 1997 BVA decision here on appeal, the Board specifically addressed the appellant's argument that the RO had erred in not considering a claim for TDIU in 1984. R. at 9. The Board found that although the RO "did not specifically refer to the provisions of 38 C.F.R. § 3.340 regarding [TDIU], the veteran had not submitted a claim for that benefit and his disabilities apart from the [PTSD] were not severely disabling." R. at 9. Therefore, because the issue of the pendency of an unadjudicated TDIU claim was expressly presented to the RO and the Board, this Court has jurisdiction over that claim. *See Fenderson* and *Holland*, both *supra*.

## B. Standard of Review

The appellant argues that "[a]s a result of the amendments to [38 U.S.C.] § 7261, Congress has created a unique statutory criteria [sic] for determining whether a Board's decision is 'clearly erroneous.'" Appellant's Supplemental Brief at 12. The appellant urges this Court to reverse, under these "new and unique statutory requirements" (*id.* at 15), the Board's findings (1) that the appellant did not have a pending claim for TDIU, and (2) that even if the appellant did have a pending claim for TDIU, he was not entitled to TDIU (*id*. at 12-17).

The changes to 38 U.S.C. § 7261 referred to by the appellant were implemented in the Veterans Benefits Act of 2002 (VBA), Pub. L. No. 107-330, § 401, 116 Stat. 2820, 2832 (2002). Section 7261 now reads as follows (The new provisions are placed in italics.):

### § 7261. Scope of review

(a) In any action brought under this chapter, the Court of Appeals for Veteran Claims, to the extent necessary to its decision and when presented, shall –

. . . .

(4) in the case of a finding of material fact *adverse to the claimant* made in reaching a decision in a case before the Department with respect to benefits under laws administered by the Secretary, hold unlawful and set aside *or reverse* such finding if the finding is clearly erroneous.

(b) In making the determinations under subsection (a) of this section, the Court shall *review the record of proceedings before the Secretary and the Board of Veterans' Appeals pursuant to section 7252(b) of this title and shall –*

*(1) take due account of the Secretary's application of section 5107(b) of this title; and*

*(2)* take due account of the rule of prejudicial error.

4

38 U.S.C. § 7261(a), (b) (as amended by Pub. Law. No. 107-330) (emphasis added). Contrary to the appellant's contentions, the Court finds that these amendments have, by their language, made very little change to our standard of review. Even if Congress (or at least some individual Members) intended to make some change to our standard of review, the VBA, as written, does not effectuate such a change.

### 1. Language of the Statute

"'The starting point in interpreting a statute is its language.'" *Lee v. West*, 13 Vet.App. 388, 394 (2000) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993).) The "plain meaning [of a statute] must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). "If the intent of Congress is clear, that is the end of the matter." *Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed. Cir. 1994) (quoting *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)). The first step, therefore, in assessing what meaning to give to the VBA amendments to section 7261 involves examining the text of these amendments.

The change intended by addition of the phrase "adverse to the claimant" is clear. Before the VBA this Court arguably had the authority to set aside a clearly erroneous finding of fact that *benefitted* a claimant. The Federal Circuit addressed an analogous issue when it determined that once a finding of well groundedness had been made (Under the law as it existed at that time, a finding of well groundedness was clearly a finding beneficial to the claimant.), the Court could not reconsider it. *Nolen v. Gober*, 222 F.3d 1356, 1360 (Fed. Cir. 2000). It is uncertain to what extent, if ever, the Court, post-*Nolen*, has set aside beneficial findings of fact. Indeed, this Court, in an opinion issued before the VBA's enactment, noted that it was a "serious question" whether the Court could disturb a factual determination that is favorable to an appellant. *See Myers v. Principi*, 16 Vet.App. 228, 232 (2002); *see also Nolen*, 222 F.3d at 1360 (noting that "[n]either this Court nor the . . . Federal Circuit has held whether this Court can disturb a favorable Board determination"). The VBA answers this question and the Court is clearly without authority to reverse findings of fact that are beneficial to claimants.

The effect of the other amendments on the Court's standard of review is not as clear. As the Federal Circuit recently noted in discussing another provision of the VBA, "[t]o say that the statute is less than brilliant in its clarity is perhaps to gild it beyond its entitlement." *Morgan v. Principi*, __ F.3d__, __, No. 02-7378, slip op. at 4 (Fed. Cir. May 6, 2003). The addition of "or reverse" in section 7261(a)(4) appears, by its terms, to allow the Court to reverse a finding of fact that is clearly erroneous. However, prior to the enactment of the VBA, indeed since the creation of this Court in 1988, this Court has had the "power to affirm, modify, *or reverse* a decision of the Board," and has done so in appropriate cases. 38 U.S.C. § 7252 (a); *see also, e.g., Pentecost v. Principi*, 16 Vet.App. 124 (2002); *Harth v. West*, 14 Vet.App. 1 (2000); *Erickson v. West*, 13 Vet.App. 495 (2000); *Powell v. West*, 13 Vet.App. 31 (1999); *Colayong v. West*, 12 Vet.App. 524 (1999); *Felden v. West*, 11 Vet.App. 427 (1998); *Rose v. West*, 11 Vet.App. 169 (1998); *Drosky v. Brown*, 10 Vet.App. 251 (1997); *James v. Brown*, 7 Vet.App. 495 (1995); *Vettese v. Brown*, 7 Vet.App. 31 (1994); *Beaty*

*v. Brown*, 6 Vet.App. 532 (1994); *Traut v. Brown*, 6 Vet.App. 495 (1994); *Barnhill v. Brown*, 5 Vet.App. 75 (1993); *Brown v. Brown*, 4 Vet.App.307 (1993); *Hersey v. Derwinski*, 2 Vet.App. 91 (1992); *Hanson v. Derwinski*, 1 Vet.App. 512 (1991); *Moore v. Derwinski*, 1 Vet.App. 356 (1991). Moreover, any notion that the insertion of the "or reverse" language somehow empowers the Court to conduct factfinding runs squarely against other unchanged statutory provisions.

Congress also amended section 7261(b), adding an entreaty to the Court to "take due account of the Secretary's application of section 5107(b) [(Benefit of the doubt)]." The Secretary's application, or lack thereof, of the benefit of the doubt rule is a part of any decision of the Board, and was therefore also already within the Court's review power under section 7252(a). The command that the Court "shall review the record of proceedings before the Secretary and the Board . . . pursuant to section 7252(b)" wraps the statutory text around on itself. Section 7252(b) states, in pertinent part, that "[r]eview in the Court shall be on the record of proceedings before the Secretary and the Board" and that "[t]he extent of the review shall be limited to the scope provided in section 7261." In other words, section 7261 states that the Court shall review the record of proceedings pursuant to section 7252(b), which in turn states that such review is limited by section 7261. Review is thus trapped between these two mutually referential provisions, which is to say that there is no clear reading of this provision. Therefore, in the search for meaning, we must turn to the legislative history.

### 2. Legislative History

A search of the legislative history of the VBA for the clear intent of Congress in amending section 7261 proves largely fruitless. First, there is slight legislative history pertaining to the language finally enacted by Congress; in fact, the only relevant history provided is the explanatory statement on the Compromise Agreement (between the Senate and House Committees on Veterans' Affairs), and two floor statements, one in the House, one in the Senate. "A committee report represents the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation. Floor debates reflect at best the understanding of individual Congressmen." *Zuber v. Allen*, 396 U.S. 168, 186 (1969). *See also Barnhart v. Sigmon Coal Co.,* 122 S.Ct. 941, 945 (2002) ("The floor statements of two Senators . . . cannot amend the unambiguous language of the statute. There is no reason to give greater weight to a Senator's floor statement than to the collective votes of both Houses, which are memorialized in the unambiguous statutory text."); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 390 (2000) (Scalia, J., concurring) ("statements of individual Members of Congress (ordinarily addressed to a virtually empty floor) . . . [are not] a reliable indication of what a majority of both Houses of Congress intended when they voted for the statute before us"); 2A SUTHERLAND STATUTORY CONSTRUCTION § 48.13 ("Statements by individual members of the legislature about the meaning of provisions in a bill . . . are *generally* held not to be admissible as aids in construing the statute . . . ." (emphasis added)); *cf. Regan v. Wald*, 468 U.S. 222, 237 (1984) ("To permit what we regard as clear statutory language to be materially altered by such colloquies [by individual Congressmen], which often take place before the bill has achieved its final form, would open the door to the inadvertent, or perhaps even planned, undermining of the language actually voted on by Congress and signed into law by the President.").

*a. Explanatory Statement*:  The most probative piece of legislative history is the explanatory statement, which reflects, at a minimum, the views of the House and Senate Committees on Veterans' Affairs.  *See Zuber*, *supra*.  The explanatory statement accompanying the VBA states, in relevant part:

> Section 401 of the Compromise Agreement follows the Senate language with the following amendments.

> The Compromise Agreement would modify the standard of review in the Senate bill in subsection (a) by deleting the change to a "substantial evidence" standard.  It would modify the requirements of the review the Court must perform when it is making determinations under section 7261(a) of title 38, United States Code.  Since the Secretary is precluded from seeking judicial review of decisions of the Board of Veterans Appeals, the addition of the words "adverse to the claimant" in subsection (a) is intended to clarify that findings of fact favorable to the claimant may not be reviewed by the Court.  Further, the addition of the words "or reverse" after "and set aside" is intended to emphasize that the Committees expect the Court to reverse clearly erroneous findings when appropriate, rather than remand the case.

> New subsection (b) would maintain language from the Senate bill that would require the Court to examine the record of proceedings before the Secretary and BVA and the special emphasis during the judicial process on the benefit of the doubt provisions of section 5107(b) as it makes findings of fact in reviewing BVA decisions.  This would not alter the formula of the standard of review on the Court, with the uncertainty of interpretation of its application that would accompany such a change.  The combination of these changes is intended to provide for more searching appellate review of BVA decisions, and thus give full force to the "benefit of doubt" provision.

148 CONG. REC. S11,337, H9,003 (daily ed. Nov. 18, 2002)

This statement provides little clarity about the meaning of the amendments to section 7261. It begins by stating that it is deleting a portion of the Senate bill that would have changed the Court's "clearly erroneous" review standard to a "substantial evidence" standard, thus effecting an intent to leave "clearly erroneous" unchanged in the statute.  The explanatory statement indicates that it is "modify[ing]" our standard of review, but explains this "modification" by stating that (1) the addition of "adverse to the claimant" is meant "to *clarify*" that factual findings beneficial to the claimant must remain undisturbed, and (2) the addition of "or reverse" is meant "to *emphasize*" that the committees wish the Court to "reverse" rather than remand clearly erroneous findings of fact, when appropriate. Thus, this passage states *both* that the amendments *modify* our standard of review and that they are meant to *clarify* and *emphasize* certain principles.  Although "modify" suggests a change to an existing structure, "clarify" and "emphasize" both suggest a clearer restatement of the status quo. Thus, the statement appears to express an intent that the VBA amendments both changed and did

7

not change our standard of review. This contradictory language cannot provide a clear picture of the intent of Congress.

Next, the explanatory statement notes that the amendments to section 7261(b) will henceforth require the Court to examine the record of proceedings and to consider the benefit of the doubt under section 5107(b), but then states that "[t]his *would not alter* the formula of *the standard of review on the Court*." (Emphasis supplied.) Finally, it states that these changes are intended to "provide for more searching appellate review of BVA decisions." This last statement makes no attempt to alter the preceding statement, which explains that these changes *do not* alter our standard of review. Again, this does not express a clear intent by Congress to change this Court's standard of review.

*b. Senate Floor Statement*: Senator John D. Rockefeller IV, then-chairman of the Senate Veterans' Affairs Committee, stated, in pertinent part, as follows:

> The Compromise Agreement would also ensure that veterans receive a full judicial review when appealing claims denied by VA. The "benefit of the doubt" rule, the standard applicable to proceedings before VA, states that a veteran's claim is granted unless the preponderance of the evidence is against the claimant. This rule, unique in administrative law, recognizes the tremendous sacrifices made by the men and women who have served in our Armed Forces. A number of veterans service organizations have expressed concern that the current appellate process is overly deferential to VA findings of fact that are adverse to veteran claimants. Specifically, these groups argue that the "clearly erroneous" standard applied by the U.S. Court of Appeals for Veterans Claims (CAVC) when reviewing the Board of Veterans' Appeals (BVA) cases results in veterans' claims receiving only cursory review on appeal, not allowing for full application of the "benefit of the doubt" rule.

> Section 401 of the Compromise Agreement would maintain the current "clearly erroneous" standard of review, but modify the requirements of the review the court must perform when making determinations under section 7261(a) of title 38. CAVC would be specifically required to examine the record of proceedings – that is, the record on appeal – before the Secretary and BVA. Section 401 would also provide special emphasis during the judicial process to the "benefit of the doubt" provisions of section 5107(b) as CAVC makes findings of fact in reviewing BVA decisions. The combination of these changes is intended to provide for more searching appellate review of BVA decisions, and thus give full force to the "benefit of the doubt" provision. The addition of the words "or reverse" after "and set aside" in section 7261(a)(4) is intended to emphasize that CAVC should reverse clearly erroneous findings when appropriate, rather than remand the case. This new language in section 7261 would overrule the recent U.S. Court of Appeals for the Federal Circuit decision of *Hensley v. West*, [212 F.3d 1255 (Fed. Cir. 2000),] which emphasized that CAVC should perform only limited, deferential review of BVA decisions, and stated that BVA fact-finding "is entitled on review to substantial

deference." However, nothing in this new language is inconsistent with the existing section 7261(c), which precludes the court from conducting trial de novo when reviewing BVA decisions, that is, receiving evidence that is not part of the record before BVA.

148 CONG. REC. S11,334 ( daily ed. Nov. 18, 2002) (statement of Senator Rockefeller).

This statement, for the most part, tracks both the explanatory statement and the House floor statement. The final two sentences, however, state that the VBA would overrule the Federal Circuit's opinion in *Hensley* (which noted "the general rule that appellate tribunals are not appropriate fora for initial fact finding" and which stated that this Court's scope of review does not involve de novo fact finding, 212 F.3d at 1263), and suggest that the Court should provide far less deference to BVA findings of fact than it has heretofore done. Although these statements might lead one to believe that the VBA allows the Court, at a minimum, to engage in the type of factfinding explicitly disallowed in *Hensley*, such a conclusion, upon examination of the entire statutory scheme, proves unworkable.

On the suggestion that the VBA represents a legislative invalidation of *Hensley*, there is no indication, outside of this single Senate floor statement, that this was the intent of the VBA. It is clear from recent legislation that Congress knows how to invalidate a court opinion when it so chooses. The effect of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA), was to remove the concept of well groundedness, which this Court in *Morton v. West* had stated was a prerequisite to receiving assistance from the Secretary under the duty to assist. 12 Vet.App. 477, 485-86 (1999) ("Congress, of course, can choose to change or eliminate the well-grounded claim requirement altogether. . . . But that balancing process is the responsibility of the legislative branch, not this Court.") *En banc review denied*, 13 Vet.App 205 (1999) (per curiam order), *remanded sub nom. Morton v. Gober*, 243 F.3d 557 (Fed.Cir.2000) (appellant died while appeal pending), opinion withdrawn and appeal dismissed, 14 Vet.App. 174 (2000) (per curiam order) (citing *Landicho v. Brown*, 7 Vet.App, 42 (1994)). The explanatory statement to the VCAA recounts the *Morton* case, and then states that it had "constructed a significant barrier to veterans who need assistance in obtaining information and evidence in order to receive benefits from the VA." 146 CONG. REC. H9,913 (2000). The *Morton* case was then referred to in the legislation itself, which set an effective date sufficient to negate any perceived deleterious effects of the *Morton* opinion. *See* VCAA § 7(b) (entitled "Rule for claims the denial of which became final after the Court of Appeals for Veterans Claims decision in the *Morton* Case"). When viewed against the backdrop of Congress demonstrating its clear intent in the VCAA to overrule *Morton*, it is difficult to distill a comparable legislative intent to overrule *Hensley* simply from the floor statement of one senator. *See Zuber*, *supra*.

When invalidating the factfinding undertaken by this Court in *Hensley*, the Federal Circuit briefly referred to section 7261(a)(4) and (c) when stating that these provisions "are consistent with the general rule that appellate tribunals are not appropriate fora for initial fact finding." *Hensley*, 212 F.3d at 1263. In *Andre v. Principi*, the Federal Circuit clarified the basis for the prohibition on factfinding by this Court: "We have recognized that 38 U.S.C. § 7261(c), which provides that 'in

9

no event shall findings of fact made by the Secretary or the Board . . . be subject to trial de novo by the Court,' prohibits the Veterans Court from making factual findings in the first instance." *Andre*, 301 F.3d 1354, 1362 (Fed. Cir. 2002). Thus, the basis for the *Hensley*-type prohibition on factfinding is both section 7261(c) and the general rule against initial factfinding by appellate tribunals, *not* the provisions of section 7261(a) or (b) that were amended by the VBA. The Court is unable to interpret the amendment of a provision separate from that which forms the basis of the *Hensley*-type prohibition to mean that it also overturns that *Hensley*-type prohibition.

Finally, even assuming, arguendo, that Congress intended to legislatively invalidate the Federal Circuit's decision in *Hensley, supra*, the Court still would have to examine whether this indeed was accomplished by this legislation. As the U.S. Supreme Court recently noted, "Our task here is not to determine what would further Congress's goal . . . , but to determine what the words of the statute must fairly be understood to mean." *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 833 (2002). As stated above, the *Hensley*-type prohibition relied on the section 7261(c) statement preventing the Court from subjecting the findings of fact made by the Secretary or the Board to "trial de novo," and this provision remains unaltered by the VBA. Because section 7261(c) remains present and unaltered in the statute, post-VBA, any factfinding authority must be circumscribed to the extent that it runs afoul of the provisions of this section. *See Meeks v. West*, 216 F.3d 1363, 1366 (Fed. Cir. 2000) ("[S]tatutory interpretation is a holistic endeavor that requires consideration of a statutory scheme in its entirety.").

The Senate floor statement notes that "trial de novo" in section 7261(c) means "receiving evidence that is not part of the record before BVA." However, that interpretation of section 7261(c) as it remained unchanged by the VBA, although consistent with an expression that *Hensley* is overruled, is inconsistent with the language in section 7261(c) that states that *findings of fact made by the Secretary or the Board* shall not be subject to trial de novo. Receiving new evidence not before the Board would be to subject *the claim*, not the findings of fact, to trial de novo. Black's Law Dictionary defines "trial de novo" as "[a] new trial on the entire case – that is, on both questions of fact and issues of law – conducted as if there had been no trial in the first instance." BLACK'S LAW DICTIONARY 1512 (7th ed. 1999). Given the "findings of fact" limitation in section 7261(c), a fair definition of the meaning of "trial de novo" under that section is the following: A new adjudication on the Secretary's findings of fact, conducted as if there had been no findings of fact in the first instance. Indeed, both this Court and the Federal Circuit seem to have consistently interpreted section 7261(c) that way. *See Hensley*, 212 F.3d at 1263-64; *Arnesen v. Brown*, 8 Vet.App. 432 (1995) (remanding claims not considered by Board and stating "[t]his Court is not generally an initial trier of fact" (citing 38 U.S.C. § 7261(c))); *Seals v. Brown*, 8 Vet.App. 291, 297-98 (1995) (Steinberg, J., dissenting) (noting that Board had failed to consider an issue, stating that "the Court has no factual basis for judicial review and should remand, rather than reverse, for the BVA to address [the claim] in the first instance", and noting that "[t]his Court is not an initial trier of fact" (citing section 7261(c)); *Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) ("Because we are a Court of review, it is not appropriate for us to make a de novo finding, based on the evidence, of [a factual matter]."); *cf. Myers v. Principi*, 16 Vet.App. 228, 236 (2002) ("[B]ecause it is possible that not all of the material that may bear on this question was included in the [record on appeal], the Court will

vacate the Board decision and remand the matter to the Board to assign an appropriate effective date.").

As section 7261(c) still bars trial de novo on findings of fact already made by the Secretary, any interpretation of the VBA amendments that gives the Court factfinding authority would create a direct conflict with section 7261(c). To the extent that this factfinding would involve facts not considered by the Board in its decision, it would arguably also run afoul of section 7252(a), to the extent that such extra-decisional facts are not deemed to be part of a "decision[] of the Board."

If the Senate floor statement suggests that the VBA allows this Court to reverse the Board's application of the benefit of the doubt provision and apply this provision ourselves (as a *result* of the aforementioned factfinding), such an interpretation conflicts with the language of both the VBA and section 5107(b). The VBA states that the Court shall take due account of *the Secretary's application* of the benefit of the doubt. Section 5107(b) states: "When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, *the Secretary* shall give the benefit of the doubt to the claimant." In *Winters v. Gober*, the Federal Circuit reviewed a statutory provision that stated that, upon presentation of new and material evidence, "the *Secretary* shall reopen the claim." *Winters*, 219 F.3d 1375, 1379 (Fed. Cir. 2000). The Federal Circuit stated: "Thus, under the statute, *only the DVA (acting on behalf of the Secretary)* has the authority to reopen a claim. The statute does not give the Court of Appeals for Veterans Claims that power." *Id.* (emphasis added). Under section 5107(b), it is *the Secretary* who is empowered to "give the benefit of the doubt to the claimant." Unless language in the VBA expressly provides that authority to the Court, any attempt to say that the Court may, under the VBA, find facts and reverse a benefit of the doubt determination, and enter its own finding as to the benefit-of-the-doubt, would have the Court improperly assuming power that, by statute, is vested solely in the Secretary.

*c. House Floor Statement*: In his floor statement, Representative Evans, then the Ranking Member of the House Veterans' Affairs Committee, stated, in pertinent part, that the VBA "clarifies the authority of the Court of Appeals for Veterans Claims to reverse decisions of the Board of Veterans' Appeals in appropriate cases and requires the decisions be based upon the record as a whole, taking into account the pro-veteran rule known as 'benefit of the doubt.'" 148 CONG. REC. H9,003 (daily ed. Nov. 14, 2002). Stating that the VBA "clarifies" the Court's reversal power suggests that there is not an intent to expand the Court's review power, but rather an intent to restate or define previously existing authority. The second portion of the House floor statement, which states that the bill "requires the *decisions* be based upon the record as a whole, "grammatically refers to "decisions of the Board of Veterans Appeals," the immediately preceding phrase. *Id.* (emphasis added. Contextually, this statement simply restates the already existing law requiring the Board to base its decisions on the record and to take account of the benefit of the doubt rule. *See* 38 U.S.C. § 5107(b). If, as seems likely, Representative Evans was referring to decisions by the Court, his statement (1) tracks preexisting law in section 7252(b) ("[r]eview in the Court shall be on the record of proceedings before the Secretary and the Board"), and (2) appears to misunderstand the import of the actual language of the amendment, which requires the Court to review *the Secretary's*

11

application of the benefit of the doubt provision. Because the Court is precluded from finding facts, it is not authorized to make the determination as to whether the evidence is in equipoise and apply the benefit of the doubt doctrine; the Court is empowered only to ensure that the Secretary's determination in that regard is not clearly erroneous. Representative Evans' statement therefore is of little help in finding the Congressional intent behind the VBA.

### 3. The VBA in Context

The VBA simply will not bear the weight of appellant's argument that this Court could and should adjudicate the appellant's unadjudicated TDIU claim. Moreover, the appellant's reading of the VBA is inconsistent with the basic structure of our judicial system which, at least as presently constituted, has two types of courts, trial and appellate. There is, after all, a reason why architects do not place witness stands in appellate courtrooms: trial courts (and government agencies) create records; appellate courts review records.

Judicial review of federal agency actions was initiated in 1946 by the enactment of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, and formalized in 1976 when Congress waived sovereign immunity and permitted judgments to be entered against the United States. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. From its inception, the APA incorporated a deferential standard for the judicial review of agency factfinding, providing that agency factual findings shall be overturned only if they are determined by the reviewing court to be "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E).

Veterans, however, were excluded from the judicial review provisions of the APA. In 1988, when Congress decided to provide for judicial review of decisions on veterans benefits by enacting the Veterans' Judicial Review Act (VJRA), Pub. L. No. 100-687, 102 Stat. 4113, it followed the APA model in almost all respects and specifically provided for deferential review of VA factual findings. In so doing, however, the VJRA replaced the APA's "substantial evidence" standard with a "clearly erroneous" test. *See* 38 U.S.C. § 7261 (a)(4) ("in the case of a finding of material fact made in reaching a decision in a case before the Department with respect to benefits under laws administered by the Secretary, hold unlawful and set aside or reverse such finding if the finding is clearly erroneous."). While conventional wisdom says that an agency is to receive less deference under the "clearly erroneous" formula, the distinction may be more theoretical than practical. As the U.S. Supreme Court recently noted, "the difference [between the 'substantial evidence' and 'clearly erroneous' standards] is a subtle one – so fine that (apart from the present case) we have failed to uncover a single instance in which a reviewing court conceded that use of one standard rather than the other would in fact have produced a different outcome." *Dickinson v. Zurko*, 527 U.S. 150, 162-63 (1999). It is perhaps of interest to note that in *Zurko*, the Supreme Court dealt with the issue whether the Federal Circuit reviews decisions of the Patent and Trademark Office under the "clearly erroneous" standard of Rule 52 of the Federal Rules of Civil Procedure, or the theoretically more deferential "substantial evidence" rule of the APA. The Court opted for the more deferential APA

rule, notwithstanding the fact that the Federal Circuit is a court with unique historical patent expertise because it evolved, in part, from the U.S. Court of Customs and Patent Appeals.

Irrespective of the merits of the academic debate as to the relative deference afforded agency factfinding by the "clearly erroneous" and "substantial evidence" standards, it is clear (1) that both require deferential, as opposed to de novo, review of agency factfinding; and (2) that Congress knows the difference between judicial adjudication of facts and judicial review of agency fact finding. When Congress desired to depart from the tenets of traditional review and to provide for de novo judicial factfinding, it did so with specificity. For example, in the Contract Disputes Act (CDA), 41 U.S.C. §§ 601-613, Congress provided that "[s]pecific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding." 41 U.S.C. § 605(a). Thus, when recourse is had to the U. S. Court of Federal Claims under 41 U.S.C. §609, review is "de novo." 41 U.S.C. §609(a)(3). Review, in turn, of the factual findings by that tribunal by the Federal Circuit is deferential pursuant to Rule 52 of the Federal Rules of Civil Procedure. Similarly, in 1991, Congress effectively confirmed de novo review of Equal Employment Opportunity Commission decisions in employment discrimination cases under Title VII of the Civil Rights Act of 1964 by creating a right to a jury trial against private employers, and it has been presumed, the United States. *See West v. Gibson*, 527 U. S. 212 (1999).

The VJRA represents a classic compromise, but it is clear from its language and its history that this Court was to be a court of review rather than a claims adjudicator and a fact finder. If Congress, in its collective wisdom, determines that the present model of judicial review of veterans' claims must be changed, it knows well how to accomplish that goal. If it decides that the record produced by a non-adversarial claims adjudication process is, in its judgment, inadequate, then it can sharpen that process by making it adversarial through elimination of the attorney fee prohibition during claim development and adjudication. Merely changing this Court's standard of review while doing nothing to enhance the record would compound rather than correct any problems. Or Congress could adopt the Title VII or the CDA model and either require the district courts to adjudicate veterans claims or, to the same purpose, establish a new trial court or exponentially expand this Court, its judges, staff, and facilities and remove the statutory mandates of 38 U.S.C. § 7252(b) (our review "shall be on the record of proceedings before the Secretary and the Board") and 38 U.S.C. § 7261 ("[i]n no event shall findings of fact made by the Secretary or the Board of Veterans' Appeals be subject to trial de novo by the Court."). Whether these, or any other, steps are necessary or even advisable are judgments which must be made not by this Court but by Congress. What this Court may decide, and what we do decide, is that the appellant's argument that the VBA somehow altered the landscape of judicial review must be and is rejected. Accordingly, we deny the appellant's request that the Court insert itself into the VA claims adjudication process by adjudicating his TDIU claim.

### C. Remedy

The appellant asks the Court to reverse what he characterizes as the two adverse findings of the Board: (1) That his original claim for service connection did not include a claim for TDIU and (2) that even if he had filed a claim for TDIU, he was not entitled to that benefit. Appellant's January

23, 2003, Supplemental Brief at 12. The Board's first adverse finding, affirmed by this Court, was expressly considered and reversed by the Federal Circuit as a matter of law. We are bound by the Federal Circuit's decision and will, therefore, reverse the Board's decision to the extent it found that no TDIU claim was raised. The second "finding" the appellant asks this Court to reverse, however, is a matter that has never been addressed by the RO or the Board. The appellant's request would not simply require review of BVA fact finding, but would have this Court adjudicate the matter in the first instance. As discussed above, nothing in the VBA changes the authority and primary responsibility of this Court, which is to review Board decisions, and we must decline the appellant's invitation to run roughshod over the VA's adjudication process.

Upon consideration of the foregoing, it is

ORDERED that the July 1997 Board decision denying the appellant's claim that the 1984 RO decision was the product of CUE is AFFIRMED; it is further

ORDERED that the Board's determination in its 1997 decision that the appellant had not raised a claim for TDIU to the RO in 1984 is REVERSED; it is further

ORDERED that the matter of the appellant's eligibility for TDIU is REMANDED to the Board for appropriate procedural compliance in accordance with the Federal Circuit's decision.

DATED:    June 3, 2003                                      PER CURIAM.