David B. MARTIN, Appellant,

v.

Anthony J. PRINCIPI, Secretary of
Veterans Affairs, Appellee.

No. 00–1330.

United States Court of Appeals
for Veterans Claims.

Nov. 14, 2003.

Robert V. Chisholm, Esq., Providence,
RI, for Appellant.

John D. McNamee, Esq., for Appellee.

## MEMORANDUM DECISION

FARLEY, Judge:

On appeal to this Court is a June 1, 2000, decision of the Board of Veterans' Appeals (BVA or Board) that denied the appellant's claims for service connection for a right hip disability, a left hip disability, and a low back disability. The appellant and the Secretary filed briefs. On December 13, 2002, the Court ordered parties to file supplemental briefs on the effect, if any, on this appeal of the Veterans Benefits Act of 2002 (VBA), Pub.L. 107–330, 116 Stat. 2820 (Dec. 6, 2002). This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). The Court will vacate the Board decision and remand the matter.

## I. BACKGROUND

The veteran served in the U.S. Army from January 19, 1970, to August 20, 1970. Record (R.) at 2; see R. at 54. At his

entrance examination, no defects of the hips or lower back were noted. R. at 57–60. A service medical record dated June 12, 1970, noted that the veteran had reported falling the night before and that he had pain in his right hip. R. at 62, 64. A June 12, 1970, radiographic report noted that the acetabular angles were somewhat increased bilaterally, which was associated with slight flattening of the femoral heads bilaterally and were "felt to be on a congenital basis." R. at 64. The veteran was diagnosed with "old dislocated hips with severe arthritis." R. at 65–66. A June 20, 1970, clinical report noted that the veteran's chief complaint was "[p]ain in both hips and back." R. at 85. A medical board concluded that the veteran had "[o]ld congenitally dislocated hips, bilaterally, worse on the right" and "[a]rthritis, traumatic bilaterally, worse on the right." R. at 67. The medical board found that both of these conditions existed prior to service and that the veteran was medically unfit for service. *Id.*

In September 1970, the veteran filed a claim for service connection for bilateral hip and back conditions. R. at 98–101. He claimed that preexisting hip and back conditions were aggravated by in-service physical training requirements. R. at 99. The regional office denied the veteran's claim in December 1970, finding that there was no evidence to show that the veteran's preexisting condition was any more severe at his discharge, beyond the natural progress of the condition. R. at 111. Thereafter, the veteran made several unsuccessful attempts to reopen his claim.

The veteran attempted to reopen his claim again in 1988. In support of his claim, the veteran submitted a medical report dated January 3, 1988, from Dr. Frank A. Graf. R. at 397–400. Dr. Graf opined that the veteran's current condition "was substantially and predominantly

caused by his injury of July 1970 and the surgeries which followed in the management and treatment of that injury." R. at 400. Dr. Graf noted that the veteran had a preexisting condition of both hip joints and stated that the preexisting condition predisposed him to the effects of the July 1970 injury. *Id.* In a September 1992 decision, the Board found that the veteran had submitted new and material evidence to reopen his claim, but denied service connection. R. at 628–46. The veteran appealed that decision to this Court, and on October 14, 1993, the Court granted the parties' joint motion to remand. R. at 661. The parties had agreed that the BVA impermissibly relied upon its own medical judgment in determining that the appellant had preexisting disorders that were not aggravated by service and that the matter should therefore be remanded for the Board to provide sufficient reasons and bases for its decision and to obtain additional medical opinions. R. at 662–78. The parties also noted that the Board had failed to take into account that the aggravation of a congenital disease, as opposed to defects, are compensable. R. at 675. The Board, in turn, remanded the veteran's claim to obtain medical records dated prior to the veteran's entrance into service. R. at 681–86.

In February 1996, the Board requested an independent medical opinion from a specialist in orthopedics. R. at 843, 846–49. In April 1996, the Board received the independent medical opinion from Dr. Michael H. McGuire. R. at 852–53. Dr. McGuire opined that the veteran's arthritis of the right and left hip existed prior to service and that there was "no way that arthritis could develop" during the veteran's eight months of service. R. at 852. He stated that the "falls in June and July simply provided the opportunity to examine the patient and establish the degree of arthritis that had developed over a life-

time." *Id.* Dr. McGuire further stated that "no progression beyond the natural course of congenital hip disease, dysplasia, and arthritis would have occurred." *Id.* With respect to the veteran's back condition, Dr. McGuire found that the veteran's symptoms, at most, were an acute exacerbation of a lifelong condition. Dr. McGuire concluded that he believed there was "no medical possibility" that the post-service disability of either hip or the low back was a result of trauma during active service. R. at 853.

In an August 19, 1996, decision, the Board again denied the veteran's claims. R. at 871–94. After the veteran appealed that decision, the parties filed a joint motion for remand of the matter for the Board to secure and consider the veteran's Social Security Administration records. R. at 921–23. The Court granted that motion on August 25, 1997. R. at 920. On remand, the veteran submitted an expert medical opinion from Dr. Philo F. Willetts. R. at 935–42. Dr. Willetts stated that the veteran "clearly had preexisting congenital dysplasia of both hips ... prior to his military service." *Id.* He noted, however, that the veteran was "asymptomatic except for his abnormal walk, until June[ ] 1971." *Id.* Dr. Willetts concluded that

> [t]he deterioration of David Martin's right hip condition appeared to have been materially and substantially accelerated in excess of what was anticipated by virtue of his injury of June 11, 1970. Although this may have also been accelerated by the rigors of basic training, there are no records available to support that. Regardless, he entered the service with apparently asymptomatic hips, developed right hip pain while in the service in June[ ] 1970, and subsequently deteriorated to the point that he needed surgery well in advance of what otherwise was anticipated by an excellent children's medical facility in Boston

three years before. Thus, the treatment to the right hip was service[ ]related. R. at 940. With respect the veteran's left-hip condition, Dr. Willetts noted that "[i]t is not clear whether [the veteran's] left hip injury was directly linked to any accelerated deterioration from his Army duty or not.... Although it is possible that basic training and military activities, combined with subsequent unloading of the right hip did significantly accelerate left hip deterioration, this is not well substantiated by the records." R. at 941. Finally, with respect to the veteran's back condition, Dr. Willetts concluded "[i]t is difficult to link [the veteran's] low back pain to his military service, in the absence of contemporary records of such symptoms." *Id.*

In the June 1, 2000, decision here on appeal, the Board denied service connection for all three disabilities. R. at 1–36. While acknowledging that the presumption of soundness applied, the BVA found that such presumption was rebutted as to the bilateral hip disability and the low back disability by clear and unmistakable evidence. R. at 25. The Board found that all the conditions were congenital defects (as opposed to diseases), that such defects were not diseases or injuries for VA compensation purposes (*see* 38 C.F.R. § 3.303(c)), and that service connection would, therefore, be permitted only for any superimposed bilateral hip and low back disabilities from in-service disease or injury. As for the right hip disability, the Board concluded that there were no post-service medical records reflecting that the veteran had incurred a superimposed right hip disability during service. The Board also found that, even if the veteran's right hip disorder was considered to be a congenital disease rather than a congenital defect, "the weight of the evidence demonstrates that there was no permanent aggravation" of the veteran's right

hip disorder during service. R. at 28. The BVA also opined that any left hip changes were congenital in origin, as opposed to resulting from any in-service injury, as shown by in-service x-ray studies. The Board also concluded that even if the veteran's preexisting left hip condition was not a congenital or developmental defect, "there was no increase in severity of the underlying [left hip] condition on account of service." R. at 32. With respect to the low back disability, the Board noted the congenital nature of any back abnormality, and that no back disability or injury, other than low back pain, was recorded in service. The Board also found that, even if the veteran's preexisting back condition was not à congenital or developmental defect, "there was no increase in severity of the underlying [back] condition on account of service." R. at 34. This appeal followed.

## II. ANALYSIS

### A. Veterans Benefits Act of 2002

As noted above, the parties submitted supplemental briefing regarding the effect, if any, of the VBA on the appellant's claims. The appellant urged that the amendments to title 38, U.S.Code, required this Court to apply a new, more deferential standard of review and that under this new standard of review, the Board's decision should be reversed. The Court recently rejected a similar argument with respect to the effect of the VBA. *Roberson v. Principi*, 17 Vet.App. 135 (2003). In any event, given the Court's disposition here, the Court finds that the VBA is not at issue.

### B. Aggravation of Preexisting Conditions

■■ Service connection for purposes of VA disability compensation will be awarded for any disease or injury that was incurred during or aggravated by the veter-

an's active service or, inter alia, for a chronic disease that was initially manifested to a degree of 10% or more with an applicable presumption period. *See* 38 U.S.C. §§ 1110, 1112(a); 38 C.F.R. §§ 3.303(a), (b), 3.307(a) (2002). Pursuant to 38 U.S.C. § 1111, a veteran is presumed to have been in sound condition at the time of enlistment except as to conditions noted at the time of examination, "or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service." 38 U.S.C. § 1111. The Secretary's regulation implementing section 1111 states, in its entirety:

> The veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto. Only such conditions as are recorded in examination reports are to be considered as noted.

38 C.F.R. § 3.304 (2002).

The appellant argues that he is entitled to the presumption of soundness pursuant to 38 U.S.C. § 1111, a presumption that can be rebutted only by clear and unmistakable evidence that his condition *both* (1) preexisted service and (2) was not aggravated by service. In two recent cases before this Court, the appellants made similar arguments with respect to the interpretation of 38 U.S.C. § 1111. *See Jordan v. Principi*, 17 Vet.App. 261, 265–66 (2003); *Cotant v. Principi*, 17 Vet.App. 116, 121–22 (2003). The Secretary ultimately agreed with the appellants in those cases and joined in the appellants' requests urging the Court · invalidate 38 C.F.R. § 3.304(b), to the extent that it is

not consistent with section 1111. *See Jordan,* 17 Vet.App. at 265–66; *Cotant,* 17 Vet.App. at 121–22. In both *Cotant* and *Jordan,* however, the Court declined the Secretary's "highly unusual invitation to invalidate in part his own regulation in § 3.304(b)" and "sen[t] th[e] issue back to the Secretary to resolve." *Cotant* 17 Vet. App. at 124–27; *see also Jordan,* 17 Vet. App. at 265–66 (stating " '[T]he Court has determined that the problems with the Secretary's regulations run far deeper than the limited 3.304(b) remedy sought by the parties.... [T]he task of straightening out this extraordinary complicated and tangled web of apparently conflicting statutory and regulatory provisions will be left to the Secretary.' ") (quoting *Cotant,* 17 Vet.App. at 130).

Here, the Board found that the appellant's bilateral hip and back conditions were not noted at his entrance examination and, therefore, the section 1111 presumption of soundness applied. R. at 25. The Board also found that the "medical evidence clearly and unmistakably establishes that the veteran had a bilateral hip and low back disabilities prior to his entrance into active service." *Id.* With respect to aggravation, however, the Board concluded (1) that "the weight of the evidence demonstrates that there was no permanent aggravation" of the veteran's right-hip disorder during service (R. at 28); (2) that "there was no increase in severity of the underlying [left-hip] condition on account of service," (R. at 32) and (3) that "there was no increase in severity of the underlying [back] condition on account of service" (R. at 34). The Board made no findings that the *lack of aggravation* was demonstrated by clear and unmistakable evidence. Given the Secretary's recent change of position with respect to 38 U.S.C. § 1111 and 38 C.F.R. § 3.304(b), the Court finds it appropriate, consistent with *Jordan* and *Cotant,* to remand the appellant's claim for the Board to consider his arguments in the first instance. Accordingly, the Court will vacate the Board's decision and remand the matter for readjudication. *Cf. Maggitt v. West,* 202 F.3d 1370, 1378 (Fed.Cir.2000) ("Whether the doctrine of exhaustion should be invoked ... entails a case-by-case analysis of the competing individual and institutional interests, including whether [this Court] should use its authority to 'remand the matter, as appropriate,' to the Board.").

The appellant also argues that the Board erred in relying upon "medical judgment" in its finding that the veteran's conditions preexisted service. The appellant contends that "medical judgment" cannot, as a matter of law, constitute "clear and unmistakable evidence" that a condition preexisted service. The Court declined to address that argument in *Jordan, supra,* because "that argument[ ] depend[s] upon a statutory interpretation that the Court has stated [ ] that it will not make." *Jordan,* 17 Vet.App. at 273.

### C. Congenital Defect vs. Disease

■ The BVA, in its decisions, is statutorily required to provide a "written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions." 38 U.S.C. § 7104(d); *see e.g., Buckley v. West,* 12 Vet.App. 76, 84 (1998); *Allday v. Brown,* 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990). In *Gilbert,* the Court ordered a remand because the decision contained "neither an analysis of the credibility or probative value of the evidence submitted by and on behalf of the veteran in support of his claim nor a statement of the reasons or bases for the implicit rejection of this evidence by the Board." *Gilbert,* 1 Vet.App. at 59. *See also Peyton v. Derwinski,* 1 Vet.App. 282,

285 (1991); *Smith v. Derwinski*, 1 Vet. App. 235, 237 (1991).

In an October 1993 joint motion for remand, the parties had agreed that the Board erred in failing "to take into consideration the principle, set forth in VA General Counsel Opinions (O.G.C. Prec. 1–90, 67–90 and 82–90) that aggravation of a congenital disease (as opposed to a 'defect') is compensable." R. at 675. In the BVA decision here on appeal, the Board concluded that all three of the veteran's conditions were congenital defects. In this regard, the Board stated:

> Clearly a major portion of the veteran's bilateral hip and low back disabilities involve congenital or developmental defects in the formation of bones of these joints. This is documented in pre[ ]service x-rays as well as the service and post-service medical records. Congenital hip dysplasia by its very nature is a congenital or developmental defect for which service connection is precluded. In this regard, the Board notes that in March 1971, Dr. Marsland, who treated the veteran prior to service, described the veteran's bilateral hip condition as a "valgus deformity" and as a "congenital deformity," and that Dr. Willetts, in 1997, stated that the veteran was born with significant hip joint deformities. As to the low back, the spondylosis at L5 involving the defect in the pars interarticularis is also a congenital or developmental defect. Service connection is only permitted for any superimposed bilateral hip and low back disabilities from in[ ]service disease or injury.

R. at 26. The Board concluded that a "major portion" of the veteran's preexisting conditions were "defects." The Board does not discuss the significance of a "major portion" of a condition being classified as a defect, or what the remaining "portions" might be. The Board also failed to cite any authority for its statement that "[c]ongenital hip dysplasia by its very nature is a congenital or developmental defect." Moreover, although the Board cites to medical opinions in which the veteran's conditions were referred to as "defects," the Board's opinion fails to discuss Dr. McGuire's opinion that the appellant's preexisting bilateral hip condition is a "congenital hip disease." R. at 852. Accordingly, the Court finds the Board's statement of reasons or bases with respect to its conclusion that the appellant's preexisting conditions were "defects" insufficient. If on remand the Board should conclude that the appellant is ineligible for service-connected benefits based upon a determination that the conditions were defects as opposed to diseases, the Board must provide an adequate statement of its reasons or bases for that determination.

### III. CONCLUSION

Upon consideration of the foregoing, the June 1, 2000, decision of the Board of Veterans' Appeals is VACATED and the matter is REMANDED.